## TEXAS CO. et al. v. TEXARKANA MACH. SHOPS. (No. 3478.)

Court of Civil Appeals of Texas. Texarkana. Jan. 5, 1928.

**1. Municipal corporations ⊜⟳663(1)—Abutting property owner's easement in street constitutes "property," entitling him to right of action for injury to his enjoyment thereof.**

The right of easement which an abutter has in street constitutes property, entitling him to maintain an action in redress of special injury to his enjoyment thereof.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Property.]

**2. Municipal corporations ⊜⟳663(1)—Owner of fee in street may enjoy it as private property only when land ceases to be street.**

The owner of fee in land covered by a street may assert full enjoyment thereof as private property only when the street ceases to be a street, and abutting property owners and the public have been divested of their rights.

**3. Municipal corporations ⊜⟳657(2)—Power to vacate streets held vested in city only as representative of public, and for public benefit (Sp. Laws 1907, c. 104, § 201).**

Power given city under Sp. Laws 1907, c. 104, § 201, to vacate and close streets, *held* vested in city purely as representative of the public, and for the public benefit.

**4. Municipal corporations ⊜⟳657(2)—City may be made trustee for public to widen, extend, grade, pave, maintain, improve or vacate streets.**

A city, as a public corporation, may be made trustee for the general public, to whom all streets belong, with power to widen, extend, grade, narrow, pave, maintain, improve, or vacate and close streets.

**5. Municipal corporations ⊜⟳657(2)—City's authority to vacate and "close" streets empowers city to relieve public from charge of maintaining street no longer useful.**

City's authority to vacate and close streets empowers city to relieve public from charge of maintaining street which is no longer useful; the word "close" being used in the sense of termination of maintenance, and not in the sense of preventing ingress and egress by obstructions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Close (Verb).]

**6. Municipal corporations ⊜⟳657(2)—Power to vacate and close streets held to give city no proprietary rights in land (Sp. Laws 1907, c. 104, § 201).**

Power under Sp. Laws 1907, c. 104, § 201, to vacate and close streets, *held* to give city no proprietary rights in land covered by streets created by dedication or prescription.

**7. Municipal corporations ⊜⟳658—City has no proprietary rights in land, but merely holds easement in trust for public.**

City has no proprietary rights in the land covered by streets created by dedication or prescription, but holds merely the right to an easement in such streets in trust for the public.

**8. Municipal corporations ⊜⟳657(2)—City may not vacate street for purpose of devoting it to purely private uses.**

A street may not in any event be vacated or discontinued for the purpose of devoting it to purely private uses, since city may vacate street only where such action will benefit public.

**9. Municipal corporations ⊜⟳657(2)—Acts of public authorities diverting public property to private use are generally void.**

The diversion of public property to private use is generally considered an abuse of power by those who are custodians of the public rights, rendering the act void.

**10. Municipal corporations ⊜⟳657(2)—Neither ordinance vacating street nor deed conveying city's interest could authorize owner of fee to obstruct street as against abutting owners.**

Neither ordinance purporting to vacate and close street and to relinquish, release, and quitclaim all right, title, and interest of city in such street, nor deed conveying all city's title and interest in the street to the owner of the fee, could authorize him to obstruct the street as against abutting landowners.

**11. Municipal corporations ⊜⟳663(2)—Where street is vacated, it will revert to owner of fee, with accompanying burden of abutting property.**

On the passage of an ordinance declaring a street vacated or withdrawn from further public charge, without a hearing being given to abutting landowner, and without compensating him, the street merely reverts to the owner of the fee with the accompanying burden of the abutting property.

**12. Eminent domain ⬤⟿69—Rights of abutting owners in existing street may not arbitrarily be taken away by ordinance vacating street without hearing and compensation (Const. art. 1, § 17).**

Under Const. art. 1, § 17, rights of abutting property owners in a street may not arbitrarily be taken away by an ordinance vacating and closing a street without a hearing being given the abutter, and without compensating him.

Appeal from District Court, Bowie County; R. J. Williams, Judge.

Suit for mandatory injunction by the Texarkana Machine Shops against the Texas Company and others. Judgment for plaintiff, and defendant named appeals. Affirmed.

The appellee, a private corporation, sought to have awarded a mandatory injunction compelling the appellants and each one of them to remove certain obstructions and inclosures placed and maintained on an alleged public street which abuts upon, and extends along, the property lines of certain lots owned and used by appellee. The Texas Company, the only defendant appealing, answered by general denial, and specially pleaded that it owned in fee-simple title the strip of land alleged by plaintiff to be a public street, and that said street was closed and vacated by the city council of the city of Texarkana, Tex., as within its charter power to do, by an ordinance duly passed on the 26th day of March, 1926. Plaintiff pleaded by supplemental petition that the alleged ordinance by the city was ultra vires and void, as an attempt to deprive the plaintiff and its predecessor in title of a valuable property right without notice and without compensation, in violation of the state and Federal Constitutions.

The following facts appear without dispute: The Texarkana & Ft. Smith Railway runs north and south across Seventh, Eighth, and Ninth streets, said streets running east and west, in the city of Texarkana. The City Improvement Company, a private corporation, on June 5, 1894, acquired the ownership by sheriff's deed, duly recorded, of block 5 of the subdivision of the T. B. Moores headright survey. The land so acquired lay immediately west, as well as east, of the right of way of the said railway company. The City Improvement Company deeded to the railway company the right of way. On August 30, 1901, the City Improvement Company, by deed, conveyed part of block 5 immediately west of the right of way of the railway company, containing 2.49 acres of land, to Louis Heilbron, the deed being duly recorded. It is not made certain that the deed called for the railway right of way. But by deed of February, 1923, the City Improvement Company conveyed the land up to the line of the right of way to Louis Heilbron, declaring in said deed that "it was the intention by said former

deed to convey all of the land in block 5 lying west of the railway company's right of way, as now owned by said railway company." On September 2, 1901, Louis Heilbron platted the 2.49 acres into lots, blocks, alleys, and streets, and duly recorded the plat or map. It was denominated as Heilbron subdivision of a part of block 5 of the T. B. Moores headright survey. There were three blocks in the subdivision. The subdivision lay between Seventh and Ninth streets in the city of Texarkana, Tex.

The recorded plat showed such streets, and called for them. The recorded plat further shows an open space, indicating a street, lying between the marked lines of the blocks of the subdivision on the east and the west line of the right of way of the railway company, and extending parallel with, and adjoining, both the lines of the platted subdivision and the right of way from Seventh street through to Ninth street. The open space has no specific designation of "street" or "alley" or width or length. It was shown by extrinsic evidence to be 25 feet in width east and west. It is this strip of land that is claimed to be a street or public way in this suit. The appellee owns in fee simple lots 1, 2, 3, and 4, block 2, and also lots 2 and 3, block 1. The defendant Carson owns lot 1 in block 1. The Texas Company owns in fee simple lot 14 in block 2. Appellee's lots are between the lots of the Texas Company and that of Mr. Carson. All of the parties deraign title to their lots under the subdivision and in accordance with the map. All of the lots abut on the open strip of land, and that is the only outlet on the east front of same. The plaintiff claimed by evidence that the strip was established as a street by dedication in fact, and became, as well, a street by prescription. The defendants claimed by evidence that the strip was not established as a street by dedication or prescription, and was purely private property of the owner not included in the plat. The case was submitted to the jury upon the single issue of a street by prescription, a right conferred by adverse user. There is ample evidence, as admitted in appellant's brief, to support the jury finding of an established street by long user by the public under claim of right and adversely to the owner thereof for more than ten years before obstructions were placed therein by defendants. In fact, the evidence warrants the inference that the strip was meant to be included in the platted subdivision. It is not claimed in the evidence that the public at any time before this suit had ceased to use the street at all. It is admitted that obstructions were placed by defendants separately on the street, near Seventh street and near Ninth street, affecting the free ingress and egress of plaintiff to and from its lots on which its business was conducted.

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The following special facts were proven by defendants:

Section 201 of the city charter (Local Laws, Regular Session Legislature 1907, p. 862):

"*Streets. Control.* The city council shall have the power to lay out, establish, open, restore, widen, extend, grade, narrow, care for, pave, supervise, maintain and improve streets, alleys, sidewalks, squares, parks, public places and bridges, and shall have exclusive power and control over the same and over such streets, alleys, sidewalks and public places and bridges that now or which shall hereafter exist in said city, and shall have the power to vacate and close them, and to regulate the use thereof, to prevent the construction on or to require the removal from the streets, alleys, highways, public places and sidewalks of said city of obstructions," etc.

An ordinance passed by the city council of Texarkana on March 26, 1926 (the present suit being filed on January 14, 1926), reading, omitting formal parts:

"Be it ordained by the city council of Texarkana, Texas:

"Section 1. That the city of Texarkana, Texas, * * * hereby releases, relinquishes and quitclaims unto the said Leo Krouse any and all right, title and interest, if any it has, in and to that certain tract, piece or parcel of land in the city of Texarkana, Bowie county, Texas, described as follows: [Here follows description by metes and bounds of the strip in controversy in this suit.]

"Section 2. That the said strip of land last described if the same was ever a street or used for street purposes be and the same is hereby vacated and closed.

"Section 3. That the mayor be and he is hereby authorized, empowered and directed to execute and deliver to the said Leo Krouse a quitclaim deed to said last mentioned and described tract of land."

A deed dated March 19, 1923, from Louis Heilbron to Leo Krouse conveying the fee to the identical strip in controversy. A quitclaim deed executed by the city of Texarkana to Leo Krouse on May 23, 1923, reciting a consideration of one dollar, and "do by these presents bargain, sell, release and forever quitclaim unto the said Leo Krouse, his heirs and assigns, all right, title and interest in and to that certain tract or parcel described as follows: [Here follows description in metes and bounds of the strip in controversy in this suit.]"

A deed dated September 27, 1923, from Leo Krouse, conveying a part of the same strip to the Texas Company.

Wm. V. Brown, of Texarkana, for appellant.

King, Mahaffey & Wheeler, of Texarkana, for appellee.

LEVY, J. (after stating the facts as above). The street in controversy had origin and was created by prescription, as determined by the jury. The appellee, as proven, has rights of an abutting proprietor. The appellant, as proven, is the owner of the fee of the land covered by the street next to its lot, and has placed thereon one or more structures. There has not been cessation of the use of the street by the general public or the abutting proprietors. The public and the abutters continued to use the street to the time of the erection of the obstruction by defendants. The appellee seeks by injunction to have the obstructions removed, as a nuisance of material and special injury to it in the free use of the street. The appellant is asserting as a defense the right to take exclusive possession and use of the land covered by the street in the way of legality, namely, that it is the owner of the fee, and that there has been termination of the right of easement in the street as such by the city of Texarkana, acting within its charter power and in the proper exercise thereof. The rights which an abutter has in the streets, whether established by dedication or prescription, as a means of enjoying the free and convenient use of his abutting property, are different from the right which the general public possesses, and they are also distinct and different from the rights of the owner of the fee.

[1, 2] All the courts and text-book writers agree that the right of easement in the street which an abutter has constitutes property, entitling him to maintain an action in redress of special injury to him of the enjoyment thereof. Jones on Easements, § 547. The owner of the fee in the land covered by the street, with the accompanying burden of abutting property, may assert full enjoyment thereof as private property only when the street ceases to be a street and the rights of the abutter and of the public therein are divested. Jones on Easements, § 552. These propositions are conceded. The single point, therefore, is that of whether a legal vacation of the street has been shown. In this respect all that was shown was that the city council passed an ordinance. There is no pretense in the record that the street had ceased to be continually used by the general public or by abutters. The street was a way of necessity to the abutters and the public in that locality, in which industrial plants are located. Looking to the ordinance, it affirmatively appears from its face that the inducing cause and purpose of the city council's action was to release "any and all right, title and interest, if any it has," of the city of Texarkana in the "land" covered by the street to a private individual, who was the owner of the fee. The further provision of vacating and closing the street was evidently intended merely to immediately accomplish the purpose of the transfer, to revert the land to primary conditions of ownership. So emphatically was this the case that a deed "to the land" was ordered to be executed and delivered.

[3, 4] There arises first the authority of the

municipal corporation, and next the validity of the ordinance. By its charter the city of Texarkana is given exclusive control of the streets within its limits, with defined powers in relation thereto. It is given the power to "widen, extend, grade, narrow, * * * pave, * * * maintain and improve" all streets. It is further given the power over the streets, namely, "to vacate and [to] close them." Clearly this general authority was vested by the law in the city, as a municipal corporation, purely as the representative of the public and for the public benefit. It may not be questioned that a city, as a public corporation, may be made a trustee for the general public, to whom all streets belong, with legal capacity to execute the trust. The Legislature had the power to so provide, as the supreme trustee for the general public. In this aspect there is no difficulty in understanding what was intended to be comprehended in the authority conferred on the municipal corporation. It means that the municipal corporation may provide a suitable system of streets, and may lawfully apply the taxes raised, according as the different stages are enumerated, namely, "to lay out, establish, open, * * * widen, extend, grade, * * * pave," etc.

[5-10] The further authority "to vacate and (to) close" streets, as a necessary incident of control and maintenance thereof, was intended to empower the city only to relieve the public from the charge of maintaining a street in case it is no longer used by the public as a street, or is no longer useful and convenient to the public in general. The word "close" is used in the sense of termination of maintenance, and not in the sense of preventing ingress and egress by obstructions. In nowise is such authority intended to comprehend proprietary rights in the land, or exercise of proprietary rights in respect thereto. Streets are not owned by the public, but their uses are public. The state or the city has no proprietary rights in the land covered by streets, created by dedication or prescription. Galveston City Surf Bathing Co. v. Heidenheimer, 63 Tex. 559. The city, as a municipal corporation, holds merely the right to the easement in such streets in trust for the public and in respect to the public interests. Therefore the authority of the city to vacate a street may be regarded as attaching at all only in case it is for the benefit of the public that such action should be taken. The benefit may be either in relieving the public from the charge of maintaining a street that is no longer used by the public, or is no longer useful or convenient to the public, or by laying out a new street in its place which will be more useful and convenient to the public in general. A street may not in any event be vacated or discontinued for the purpose of devoting it to purely private and inconsistent uses, as without the authority of the municipal corporation, as a trustee, to do. Elliott on Roads and Streets (2d Ed.) § 875; Smith v. McDowell, 148 Ill. 51, 35 N. E. 141, 22 L. R. A. 393. The diversion of public property to private use is generally considered an abuse of power by those who are custodians of the rights of the public, rendering the act void. Van Witsen v. Gutman, 79 Md. 405, 29 A. 608, 24 L. R. A. 403; Horton v. Williams, 99 Mich. 423, 58 N. W. 369. Therefore neither the ordinance nor the conveyance from the city to appellant could legally be regarded as a license to appellant, as wholly without the authority of the city to do, to permanently occupy and obstruct the use of that portion of the street, in private injury to abutters.

[11, 12] Assume, however, in another aspect of the ordinance, that the city council had the purpose and intention by the ordinance to vacate the street at all events. Section 2 seems to indicate that the city council regarded it as uncertain that the street was longer used by the public. Even so, upon passing the ordinance declaring it vacated or withdrawn from further public charge, the street would merely have reverted to the owner of the fee with the accompanying burden of abutting property. But the validity of the ordinance is affected by the exercise of the authority of the city council. The rights of abutting owners in an existing and used street may not at all events be taken away by the mere passage of an ordinance declaring it vacated. The constitutional objection would be present that the abutter could not be deprived of use of, and access to, the street without a hearing upon the subject, and without compensating him therefor, as in the nature of condemnation. The power to discontinue at all events an existing and used street, in its very nature, is not absolute and without limitations. Upon sound principle, every restraint placed by a public trustee or agent upon the common use of streets must be justifiable upon established principles of government. Otherwise it would be equivalent to the recognition of a despotic power over every act which may be done in respect to the streets, without regard even to the requirement of due process of law. Counties are not allowed by law to discontinue an original highway or road without notice and hearing even to the general public. Article 6705, R. S. 1925; Haverbekken v. Hale, 109 Tex. 106, 204 S. W. 1162. Certainly on no other grounds could the municipal corporation deprive an abutter of his property rights in an existing and used street. Such ordinance as to him would be ineffectual and void. Elliott on Roads and Streets (2d Ed.) § 871; Jones on Easements, § 549; Black on Const. Law (3d Ed.) p. 484; Lincoln v. Inhabitants of Warren, 150 Mass. 309, 23 N. E. 45; Pearsall v. Board of Supervisors, 74 Mich. 558, 42 N. W. 77, 4 L. R. A. 193; Mitchell v. St.

Louis, etc., R. Co., 116 Mo. App. 81, 92 S. W. 111; section 17, art. 1, Constitution of Texas; City of Texarkana v. Lawson (Tex. Civ. App.) 168 S. W. 867.

Therefore the appellant has not shown the legal right to obstruct the street, and the judgment of the district court is in all things affirmed.