[Civ. No. 6510. First Appellate District, Division One.—December 24, 1928.]

THE PEOPLE ex rel. U. S. WEBB, Attorney-General, etc., Appellant, v. CITY OF SAN RAFAEL, a Municipal Corporation, et al., Respondents.

U. S. Webb, Attorney-General, Leon French, Deputy Attorney-General, and Daniel A. Ryan for Appellant.

Jordan L. Martinelli, City Attorney, R. W. Palmer and Orrick, Palmer & Dahlquist for Respondents.

BARNARD, J., *pro tem.*—This is an action brought in the name of the People of the State of California against the

City of San Rafael, a municipal corporation, the members of its City Council, and the Northwestern Pacific Railroad, a corporation, seeking to set aside the action of the said City Council in closing and vacating a portion of a public street within said city, as a gross abuse of discretion, and as having been taken for the purpose of transferring such portion of a public street to a private corporation. After trial, judgment was entered for the defendants, and the plaintiff has appealed. As grounds for reversal, the appellant claims that the evidence shows the sole purpose of the City Council in closing said portion of a street to have been to facilitate the construction by the defendant railroad company of a new depot; that the law does not permit the granting of a street by a city to a railroad company; and that the findings of the trial court that such action was in the interest of the public safety and convenience are not sustained by the evidence, and that the facts do not warrant the conclusions drawn therefrom.

The following pertinent facts are disclosed by the evidence: The City Council of the City of San Rafael on the twenty-fifth day of November, 1924, passed an ordinance vacating that portion of Ida Street in said city which is crossed by the double tracks of the Northwestern Pacific Railroad. The main line tracks of this railroad, in the vicinity of the West End Station in San Rafael, runs approximately east and west, being parallel to and about 400 feet to the south of Fourth Street, one of the main streets of the city. Between Fourth Street and the railroad are located two streets running north and south which are only 129 feet apart. One of these, known as G Street, is one of the main cross streets in that part of town, extending beyond Fourth Street to the northern limits of the town. The other street, known as Ida Street, is but 129 feet west of G Street, and runs only from Fourth Street to the south line of the railroad right of way, its entire length being approximately 400 feet. To the south of, immediately adjoining, and parallel to the railroad right of way, is a street running east and west and known as West End Avenue. Prior to the closing complained of in this case, both G Street and Ida Street extended across the railroad right of way and connected with West End Avenue, which was their southern terminus. On the railroad right of way between

Ida and G Streets is located the West End Station, where trains stop. Ida Street and G Street are also connected by a paved street, 33 feet in width, immediately north of the depot and paralleling West End Avenue. The part of Ida Street ordered closed by the City Council consists only of that portion within the railroad right of way. In other words, by the closing complained of, Ida Street is made to end at the north line of the railroad right of way, whereas formerly it crossed the right of way and connected with West End Avenue.

The testimony shows that by closing this part of Ida Street, the grade crossing theretofore existing at that point was eliminated, and persons desiring to cross from this street to West End Avenue must now traverse the 129-foot street north of the tracks, to G Street and cross there. That this action of the City Council was a part of a general plan of improving street conditions in the vicinity of West End Station. That until the year preceding this action there was no connection, fairly passable for traffic, to the south of the railroad and between the ends of G Street and Ida Street. But at that time, and pursuant to the general plan referred to, the city acquired certain private property and opened and paved West End Avenue. That in paving West End Avenue, in adhering to and meeting existing street grades, there had necessarily been created some obstruction to the entrance of Ida Street into West End Avenue, Ida Street being on a different grade at the point of intersection. That at about the same time, the 129-foot street to the north of the depot, between Ida Street and G Street was paved, thus permitting traffic on Ida Street to cross the railroad either on that street or by way of this 129-foot Street and the G Street crossing.

It further appears from the evidence that because of these two grade crossings (G Street and Ida Street) only 129 feet apart, trains, when stopped at the West End Station, frequently blocked both crossings. That at conferences between members of the City Council and railroad officials, looking toward a needed new depot, it was suggested that if the depot was moved west about 50 feet it would permit trains to stop without blocking the G Street crossing, and in addition, through sheds and approaches thus made room for, passengers would be enabled to board and leave the

trains more comfortably. Before taking the action complained of herein, the City Council made the other street improvements above referred to. Petitions signed by residents in the vicinity, some favoring and some opposing the closing of the Ida Street crossing were also considered. There was evidence that in view of the improvement of West End Avenue and the 129-foot street between Ida Street and G Street, the Ida Street crossing was no longer necessary to serve the public in that vicinity; that this closing eliminated one of two dangerous grade crossings existing within 129 feet of each other; that there was no considerable travel over Ida Street; that G Street was the wider and more traveled roadway, being a through street, while Ida Street is only one block in length; that a crossing at G Street is safer, more practicable and more necessary than one at Ida Street; and that this closing will prevent the blocking of both streets by stopped trains, and will permit one street, the main traveled one, to remain open to traffic during such times.

Among other things, the trial court found as follows: "that the action of the City Council of said City of San Rafael in adopting said Ordinance vacating said portion of said Ida Street was required by public interest, necessity and convenience and was not directly, or at all, opposed to the public necessity, interest or convenience; that the adoption of said ordinance vacating said Ida Street was not for the purpose of surrendering or conveying to a private party, the defendant Northwestern Pacific Railroad Company, a corporation, public property; that public interest and convenience required that said portion of Ida Street be closed up and abandoned. . . .

"That the action of the City Council in adopting said ordinance vacating said portion of Ida Street was not a gross or any abuse of official discretion and said action was required by public interest, necessity and convenience, and that the said public necessity, interest and convenience were considered by the members of the City Council voting in favor of said proposed vacation and the adoption of the said ordinance vacating said portion of said Ida Street, was not for the purpose of surrendering or vacating to a private party, to wit: the said Northwestern Pacific Railroad Company public property, to wit: a portion of a public street, which is much, or at all, needed in said community. . . .

"That the portion of said Ida Street so ordered to be closed constituted and does constitute a railroad grade crossing the continuance of which constituted and does constitute a public menace and danger, and that the interest of public convenience and safety required and do require that said railroad grade crossing be closed;

"That there now exists at a point one hundred and twenty-nine feet easterly from said Ida Street railroad crossing another open, public street crossing the said railroad tracks of said defendant Northwestern Pacific Railroad Company, known as the 'G' Street crossing, and that said 'G' Street crossing, is a wider, safer and better traveled crossing than said Ida Street crossing, and that the closing of said Ida street crossing and the diverting of the traffic thereover to the 'G' street crossing will result in no inconvenience to any members of the traveling public and will, on the other hand, promote public safety and the public welfare;

" . . . that owing to said Ida street crossing and the grade of said Ida street at said crossing it is extremely difficult, unsafe and inconvenient for the traveling public to board and/or leave said trains at said Ida street crossing on either the northerly or southerly sides thereof";

" . . . that by the closing of said portion of Ida street and the construction of said new depot and platform, the trains of said defendant railroad may be stopped at said West End Depot without blocking the traffic over said 'G' street crossing and without causing inconvenience to the traveling public and to the residents of said City of San Rafael and said vicinity, traveling over said 'G' street crossing; that owing to said Ida street crossing said defendant railroad is unable to maintain suitable platforms thereon of sufficient length to serve and accommodate the public in general with safe, adequate, and boarding facilities."

 The principles of law relating to the power of cities in vacating and closing streets within their limits are clear and well established. It is, of course, the law, supported by every consideration of public policy, that municipal authorities may not vacate any portion of a public street for the sole benefit and use of private individuals or corporations. (*People* v. *City of Los Angeles,* 62 Cal. App. 781 [218 Pac. 63].) But, on the other hand, it cannot be questioned that in a proper case a city, through its duly constituted authori-

ties, may close and vacate a street, or a part thereof, in the interest of the safety, convenience and good of the general public. ■ Nor is this power affected by the fact that, as one of the incidents to its exercise, the beneficial use or title to the land abandoned may, and usually does, revert to private parties.

■ The opening, closing and improvement of a city's streets are of much greater concern to its inhabitants than to the people of the state at large. (*City of Los Angeles* v. *Central Trust Co.,* 173 Cal. 323 [159 Pac. 1169].) The closing of streets is a legislative function, and when delegated to the City Council by the legislature is within the discretion of the council. (*Polack* v. *Trustees of the San Francisco Orphan Asylum,* 48 Cal. 490.) ■ We must take judicial notice of the charter of the City of San Rafael. (Const., art. XI, sec. 8.) Section 18 of this charter delegates the authority to close the streets of said city to the City Council thereof. This power being left by the legislature with the city, it is then, in the first instance, a matter for the City Council of the city to decide whether or not the closing of a particular street, or part of a street, is in the public interest.

■ It has also been held that "it is essentially a judicial question whether the vacation of a street be for a public or a private benefit," that a gross abuse of discretion may amount to a legal fraud, that the decision of this question, which lies first with the City Council, in cases where such legal fraud is claimed may be reviewed by the courts, and that where such an abuse of discretion on the part of a city council has been shown in this regard, its action may be set aside. (*People* v. *City of Los Angeles, supra.*) But where this discretion has been soundly exercised based upon sufficient facts, with a proper consideration of the needs of the public, with a minimum of damage to all concerned, and with the end of securing certain real benefits for the public, the courts should not and cannot interfere.

■ In the instant case the trial court found on these main issues that the City Council of San Rafael had not abused its discretion in closing the portion of Ida Street involved herein, but that said closing was required by the public interest, convenience, necessity, and safety. The question, then, is as to the sufficiency of the evidence to support

such findings. It is, of course, true that a city cannot "barter" away its streets. And it has been held that the advantage coming to the public from vacating a street must arise from the vacation itself, and not from the future use to which the vacated property is put. (*Horton* v. *Williams*, 99 Mich. 423 [58 N. W. 369].) Conceding that this is the rule, and assuming, also, what is not necessary for us to decide, that a contemplated use of property for depot purposes, as suggested herein, is not such a public advantage arising from the vacation itself, as would be required by the above rule, still the record here shows other advantages directly accruing to the public from the street closing in question. The evidence showing the elimination of a dangerous grade crossing, where two grade crossings are in such close proximity, and the doing away of the public inconvenience of having both crossings blocked by stopping trains, are advantages directly accruing from the street closing. And that these facts were considered by the City Council is of itself, irrespective of any other consideration, sufficient to support the finding of the court that the City Council was not induced to this closing solely by the desire to turn the land over to the railroad company, but was actuated by considerations of the public good. This is especially true in view of the testimony showing the general plan of street improvement in that vicinity, the relation of Ida Street to the other streets, the traffic conditions, and the comparison of the resulting inconvenience with the benefits to the public at large.

While the action of a City Council in such a case as is here considered is properly reviewable by the courts, both public interest and the law requires that it be not set aside, except on a substantial showing of an abuse of discretion, or of fraud. No fraud here has been claimed, and the trial court, having heard all the witnesses and being familiar with the entire situation, has found that there was no abuse of discretion. After a careful study of the record we are of the same opinion. The most that can be said of any facts called to our attention by appellant, as pointing to a contrary conclusion, is that they create some conflict in the evidence. In our opinion the evidence amply supports the findings of the trial court. The views herein ex-

pressed make it unnecessary to consider any other points urged.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 16, 1929.