[Civ. No. 16390.   Second Dist., Div. Two.   Nov. 12, 1948.]

THE PEOPLE ex rel. L. L. WAGNER, Appellant, v. CITY OF POMONA et al., Respondents.

Allard, Brownsberger & Shelton, James G. Whyte and Roy A. Linn for Appellant.

O'Melveny & Myers, Pierce Works, Deane F. Johnson, Nichols, Cooper & Hickson and Don P. Nichols for Respondents.

McCOMB, J.—The present action was instituted by relator L. L. Wagner in the name of the People of the State of California for the purpose of setting aside an order of the City Council of Pomona, vacating for public purposes a portion of Commercial Street in the city of Pomona lying between Gibbs and Palomares Streets.

Commercial Street runs in an easterly and westerly direction, dead-ending with Rebecca Street on the west and Towne Avenue on the east. It parallels and lies one shallow block north of the side-by-side Southern Pacific and Union Pacific rights of way through Pomona. Throughout its entire length it and the lots abutting upon it are zoned for heavy industry.

The trial court found that the street closing was in the public interest and ordered by the city council "in good faith, and without any fraud, collusion or connivance with any person, firm or corporation, or any abuse of discretion, and solely for and by reason of the public necessity, interest and convenience."

This is the sole question necessary for us to determine:

*Is there substantial evidence to sustain the trial court's finding that in vacating, closing and abandoning the portion of Commercial Street in the city of Pomona here involved, "each and every act and thing done in connection therewith, and incidental thereto, the members of the Council of the City of Pomona, and each of them, and each and every officer, agent and representative of the said City of Pomona acting in connection therewith, acted in good faith, and without any fraud, collusion or connivance with any person, firm or corporation, or any abuse of discretion, and solely for and by reason of the public necessity, interest and convenience?"*

This question must be answered in the affirmative and is governed by these pertinent rules:

■ (1) In the absence of evidence of (a) fraud or (b) collusion between a city council and private land owners, the act of a city council in ordering the vacation of a street is legislative in character and is conclusive and binding upon the courts both as to the necessity or convenience of the improvement and as to the extent thereof. (*Beals* v. *City of Los Angeles*, 23 Cal.2d 381, 385 et seq. [144 P.2d 839]; *People v. Oakland*, 96 Cal.App. 488, 496 [274 P. 438]; *People* v. *City of San Rafael*, 95 Cal.App. 733, 739 [273 P. 138].)

■ (2) The mere fact that a property owner who will benefit by the vacation of the street agrees to pay all the expenses incident to such improvement does not of itself make the proceedings not in the public interest. (*City of Oakland* v. *Parker*, 70 Cal.App. 295, 298 [233 P. 68]; *Santa Ana* v. *Harlin*, 99 Cal. 538, 541 [34 P. 224]; *People* v. *Oakland*, 96 Cal.App. 488 [274 P. 438].)

■ (3) Proceedings taken by a city council in vacating streets for the purpose of general industrial expansion are in the public interest. (*People* v. *Oakland*, 96 Cal.App. 488, et seq. [274 P. 438]; *Ponischil* v. *Hoquiam Sash & Door Co.*, 41 Wash. 303 [83 P. 316, 317].)

■ In the present case the record discloses that the mayor of respondent city tesified as follows:

"I would have voted to close that street from one end to the other if we could get industries who owned land on each side, any time, would do it today, sir, my thought being that that would bring industrial expansion to the City of Pomona. My purpose in voting to close Commercial Street between Gibbs and Palomares was to encourage and to keep industries in Pomona, give those industries a chance to operate.

"I was elected on an industrial expansion program and reelected and reelected and to vote to close that street for the expansion of an industry or as many industries as could be established on that street was according to my policy. It was my wish to increase our industries and bring other industries to Pomona. With reference to industry zoning, there is nothing on the south side of the railroad tracks that is adjacent to the Union Pacific. Only the north side of the Southern Pacific is available and there is probably not anything available on that side. Neither is there an inch available on the Union Pacific side so we have to economize on every square foot we can get with railroad frontage. The portion of the industrial zone shown on this map which abuts the main line trans-

continental facilities includes Commercial Street as shown on the map, defendant's Exhibit E, throughout its entirety. Commercial Street is just back of the Southern Pacific track and all of it lies within the heavy industry zone.

"The map, defendant's Exhibit E, reflects the industry planning of the City Planning Commission of the City of Pomona as approved and carried into effect by the City Council in its zoning ordinance.

"I also took into consideration in arriving at my decision in this matter the recommendation of Gordon Whitnall as expressed in the letter read to the Council by Mr. Nichols at one of our meetings. I took into consideration the following statement contained in Mr. Whitnall's letter: 'Normal industrial uses desire sites having depths. City lots cramped between streets forming limited size blocks do not lend themselves satisfactorily to substantial industrial purposes. This is amply demonstrated by what has already happened in cases where given industries continguous to the railroad have been forced to expand plants on the properties across Commercial Street. Fairbanks Morse and Sanitary Laundry are examples.'

"Modern planning practices recognize these facts and they have developed the policy of providing suitable industrial sites by: 1. Consolidating areas where possible in developed sections of cities. 2. Designing new areas ample as to size and shape and well served with all required transportation facilities."

Similarly, various councilmen testified as follows:

Councilman Lindesmith: "I gave consideration to possible industrial expansion in the City of Pomona adjacent to the Southern Pacific right-of-way on the north side. I gave consideration as to the street closing and as to industrial expansion to the depth of the lots, the location as to the railroads, the fact that the street is not a through street, and also I observed the traffic condition existing on the street before the closing. The traffic, I would say, was comparatively light in reference to trucks and heavy deliveries being made. It is my observation that most of them are made either from Fifth or Garey to the adjacent north and south streets to the plant where the commodity is being delivered and there does not exist, in my opinion, a heavy traffic problem on that street in regard to delivery of commodities.

"The recommendation of the Planning Commission was directed to the Council; all the discussion was as to the traffic

condition existing on Towne Avenue and the over-all picture as to the benefit the City, as a whole, would acquire by the closing of the street. I recall at one of those meetings an excerpt was read to the persons present from a letter from Mr. Gordon Whitnall, a planning expert for the City Planning Commission.

"I took the recommendation of the Planning Commission into consideration and it helped fit into the picture of my final decision.

"I could not see very much difference in the volume of traffic on Commercial Street after the closing or barricading of the street in 1941—I could see no great change. That particular block has been by-passed for years there as far as traffic is concerned."

Councilman Philpott: "There were and are—there has been no change—more boulevard stops on that piece of street than there is on any other street in town; more widely cut up than any other section of Pomona. There were boulevard stop signs blocking east and west traffic at the intersection of Commercial with Main Street, Garey, Gibbs, and Palomares. From what I have seen of the trucking traffic in that area, there is none. To a heavy hauler, the most abominable thing he has in his life are boulevard stops at every block. As a result, all heavy traffic, to the best of my knowledge, comes in on Holt or Fifth or one of these through streets and coming in from the other direction, they come in from the west, again avoiding boulevard stop signs.

"As to the factors which I took into consideration in voting for the closing, I have some very definite ideas as to land use, being an engineer. In any one of these small 330-foot blocks, the area of the streets bounding it equals thirteen city lots while in the block itself there are but twelve. In other words, in any residential area, as this town was laid out in the old days, there is actually more area in the streets surrounding a block than there is in the block itself. It is the duty of a city official to determine whether a community is getting the most advantageous benefits of the public domain. A city street or public property has to be evaluated when it comes to closing as to whether it is more valuable as a so-called thoroughfare or a public property. It is my opinion that unless a street serves its purpose best as a thoroughfare, it should always be closed. My personal opinion was confirmed by the Whitnall report and with all considerations then before me, I decided

in my own mind without any equivocation that that street should be closed. I also took into consideration as a factor the question of general industrial expansion within the limits of the City of Pomona.

"What I am trying to convey is this. A piece of land should be used to the best advantage of the community, the greatest return to the community. If there are few vehicles crossing it as a thoroughfare, it is of little value to the community as a street. It has little value because they do not use it. On the other hand, if this same piece of property, Fairbanks, Morse or anyone, I am not concerned, it might be John Doakes —if that same piece of property can be used to support a project, whether it is a business, industry or even an off street parking project, in view of the less usage as a street, it is more important for this other specific purpose. In this particular case, closing it for Fairbanks, Morse, the individual company, to use, I feel that the good to Fairbanks, Morse was incidental to the good of the community in closing that street.

"What I have said here, in effect, Your Honor, is that the value and use of that street to the whole of the City of Pomona was greater closed than open."

Councilman Persons: "I considered the vacation of the portion of Commercial Street in which we are interested here was to the best interests of the public of the City of Pomona. I made up my mind after contacting some businessmen out on the east end of Commercial Street that the closing would not damage any of the business people along Commercial Street that might use it if it was open. I had in mind the industrial zoning which had been laid out by the Planning Commission and approved by the Council and I took very much into consideration the question of present and future industrial expansion of the City of Pomona and I considered such industrial over-all expansion as being to the best interests of the public. I took into consideration the statements of Mr. Whitnall in arriving at my decision on this matter. As a member of the Planning Commission, I was somewhat familiar with that report. The matter was discussed in open Planning Commission meetings when Mr. Whitnall was present.

"In voting for closing Commercial Street between Gibbs and Palomares, that was in line with my idea of what the industrial expansion of the City should be. In other words, anything which would permit industrial expansion in the City of Pomona would be, in my mind, for the public benefit."

Councilman Hart: "Due to the industrial expansion of the town and for the encouragement of industries that were here along with the over-all plan, the railroad being a predetermining factor, I felt it was to the best interests to start steps in that direction and the closing of Commercial Street would be just the beginning of that. I attended the meeting of January 29th when the Whitnall letter was read and I took into consideration, as one of the factors which influenced me in my action, the views of Mr. Whitnall as discussed in that letter."

The foregoing testimony clearly supports the trial court's finding that the city council, in vacating the street in question, acted in good faith and without fraud or collusion and solely by reason of public necessity, interest and convenience, and that the vacation of the street was in the public interest.

Under rule 1, *supra,* the finding being supported by substantial evidence is binding upon this court. Under rule 2, it was immaterial that Fairbanks, Morse and Company paid the expenses incident to the abandonment of the street. Likewise under rule 3, *supra,* since the abandonment was for the purpose of industrial expansion, the abandonment was in the public interest. Under this same rule it is immaterial in the present proceeding that the city council had not as yet adopted a master plan for the zoning of the entire city of Pomona.

The case of *People* v. *City of Los Angeles,* 62 Cal.App. 781 [218 P. 63], relied on by plaintiff, is not applicable to the facts of the present case for the reason that in the cited case the city was endeavoring to sell to a private property owner street property (Argyle Avenue in the city of Los Angeles), which it was attempting to vacate, and the court in such case held that it was not in the public interest for the city council to sell to a private owner street property of the municipality. The court said at page 785, *People* v. *City of Los Angeles, supra,* "To put the matter bluntly, on the evidence adduced the finding of the court was to the effect that, without the interest or convenience of the public being considered in any way the city council sold a public street to the Famous Players-Lasky Corporation for a consideration of $1,000." Again at page 787, "According to the evidence and findings by the court in this case there was no such thing as the public interest or convenience of the public taken into consideration by the city council."

In the instant case the street is not being sold to Fairbanks, Morse and Company by respondent city, but the basis of the

vacation of the street is the public interest which as we have heretofore pointed out finds substantial support in the evidence.

In view of our conclusions, the judgment is affirmed.

Moore, P. J., concurred.

WILSON, J.—I dissent. To affirm the judgment in this case is to ignore the indubitable and unquestioned facts shown by the exhibits and by the entire evidence, other than that of the city officials upon which the majority of this court rely, and to accept the testimony of the latter as statements of fact, whereas their evidence consists of conclusions unsupported by facts. The majority opinion disregards and disavows every principle of law stated in *People* v. *City of Los Angeles,* 62 Cal.App. 781 [218 P. 63].

The trial court found (1) that the closing up, vacating and abandoning of the portion of Commercial Street described in the resolution of the city council was and is required by the public interest and convenience and (2) that the elimination of traffic over that portion of the street was and is promotive of the public safety and welfare.

There is nothing in the record or in the briefs convincing in the slightest degree that the closing up and vacating of the single block of Commercial Street here involved is for the interest, convenience, necessity or welfare of the public, or that the public safety and welfare will be promoted by the elimination of traffic thereon. The facts demonstrated by the evidence, especially the exhibits, and the inferences to be drawn therefrom, so overcome and outweigh the testimony of the witnesses to the effect that the acts of the city council were for the public benefit and not for the private gain of Fairbanks, Morse & Company that the support necessary to sustain the finding is nonexistent.

In taking this position I do not overlook the rule that a finding of the trial court is binding on a reviewing court if there is substantial evidence to sustain it. However, as stated in *Herbert* v. *Lankershim,* 9 Cal.2d 409, 471 [71 P.2d 220], this rule "does not relieve an appellate court of its duty of analyzing the evidence in the light of reason and human experience and giving consideration to the motives and propensities which tend to influence or prompt human action, in an effort to solve the question as to whether the judgment is reasonably and substantially sustained by the evidence. . . .

There must be more than a conflict of mere words to constitute a conflict of evidence. The contrary evidence must be of a substantial character, such as reasonably supports the judgment as applied to the peculiar facts of the case." If the evidence is so slight and tenuous as not to create a real and substantial conflict the reviewing court may set aside the finding. (*Fewel & Dawes, Inc.* v. *Pratt,* 17 Cal.2d 85, 89 [109 P.2d 650].) In order that a finding be sustained there must be more than a scintilla of evidence to support it—the evidence must possess sufficient substance to bear the weight of the burden placed upon it in the situation existing in the case. Whether or not there is substantial evidence is a question of law to be determined by the court—any court to which the challenge is addressed—and when the question is whether there is sufficient substance in the evidence to support the finding the court must determine that question as applied to the peculiar facts of the case. (*Guardianship of Sturges,* 30 Cal.App.2d 477, 497-8 [86 P.2d 905].)

The fact is that the oral testimony of the members of the city council consists to a greater degree in the expression of opinion that the vacating of the block in question would redound to the benefit of the city of Pomona in the future than in any statement of fact indicatory of any benefit whatsoever to the city. Their evidence (by evidence I refer to testimony as to facts, not to opinions and conclusions) whereby they attempt to justify their acts on the ground that the closing of the block was for the public benefit and convenience, is so trivial and insignificant in comparison with the actualities disclosed by the record that it does not furnish the *substantial* evidence that will preclude an appellate court from reviewing the entire record for the purpose of determining whether the findings and judgment have the requisite support.

It needs only an examination of the map annexed to the complaint, on which Commercial Street is platted for its entire length of approximately 1 mile and which indicates the use made of property fronting thereon, to demonstrate (1) that the resolution of the city council ordering the vacating of the block here involved is based on a false premise; (2) that the findings of fact are not sustained by the evidence; (3) that the testimony of the witnesses that the closing of the street is a part of an "over-all plan" has no foundation whatsoever insofar as is shown by the evidence in the case; (4) that the vacating and abandonment of the block as a public street and highway and the elimination of traffic thereover will not

promote the public safety, convenience and welfare, and that the statement in the council's resolution to that effect is not a true statement.

Commercial Street is approximately 1 mile in length. Nine streets extend across it and three others deadend into it. The street consists of 10 blocks on the south side and 14 on the north. Two lots fronting on the south side are vacant; on the north side seven lots are vacant and five are occupied by residences. With these exceptions the entire frontage is occupied by commercial and manufacturing establishments, including several heavy industries.

The evidence quoted in the majority decision consists of statements of conclusions and opinions of the witnesses without factual support. I have searched the record in vain for a single statement of fact which supports the findings (a) that the vacating and abandoning of the street is "required by the public interest and convenience" and (b) that the elimination of traffic over the block in question "is promotive of the public safety and welfare."

The members of the city council were in accord in their opinions testified to at the trial that the vacation of the block is a part of a plan to encourage and keep industries in Pomona and that it would bring industrial expansion to the city; that in vacating the block they gave consideration to possible industrial expansion of the city along the Southern Pacific Railroad, and the closing of the street was according to their policy for the expansion of industry; that they gave consideration to the fact that there was no heavy traffic problem on the street; they considered the closing of the block as a part of some so-called "over-all picture" to be a benefit to the city as a whole; they considered the several boulevard stops on the street and that such stops are inconvenient to a heavy hauler; they admitted that the closing of the block would be of benefit to Fairbanks, Morse & Company but they considered that such benefit was incidental to the general good of the community; they believed that anything that would promote industrial expansion would be for the public benefit; they considered that the desire for industrial expansion of the city and the encouragement of industries already established, along with the "over-all plan," (not yet formalized) required them to begin in that direction and the closing of the block of Commercial Street would be just the beginning. The Whitnall letter, upon which some of the witnesses relied, sets forth merely the general self-evident proposition that

industrial establishments must have ample space but it does not contain a single word suggesting in what manner or to what extent this street closing proceeding will add to the industrial progress of Pomona or how it will promote the public convenience, safety and welfare.

None of the witnesses testified to any fact that would support their opinions and beliefs upon which the majority opinion relies for the affirmance of the judgment. Their testimony consists of the same hopes and wishes for great industrial expansion of the city that are in the minds of officials of all cities but they do not even suggest any presently existing plant that will be enlarged nor any prospective industry that will be established in the city as a result of closing the block in question or that will be attracted by the evanescent "over-all plan."

How the closing of one block, both sides of which are occupied by one manufacturing establishment, would encourage any new industry in the city or how it would bring industrial expansion is not indicated in the evidence; closing of the block could not possibly cause industrial expansion on Commercial Street since all property fronting thereon, with the exceptions above noted, is already occupied by business installations, nor is it shown that the abandonment proceedings would result in adding industries on adjacent streets; there is nothing in the evidence to indicate how the traffic problems of the other business establishments on the street, which occupy the frontage not covered by Fairbanks, Morse & Company's plant, would be aided by the closing of this block; the "over-all plan" is not disclosed by the record; there is no evidence that any such plan had been adopted by the city prior to the passage of the resolution abandoning the block, or had been adopted at the time of the trial of this action, and there is no evidence as to when such plan is expected to be adopted, if at all, or what it will represent if and when it materializes; it is not indicated in what manner the closing of the block will eliminate boulevard stops; furthermore, the closing of the block will cause heavy haulers to detour around it, with the necessity of making four right-angle turns, instead of going straight through; the benefit to the community is not shown, but the closing of the block does allow Fairbanks, Morse & Company to expand their plant over the public highway to the exclusion of the public; it is obvious that the closing of the block in question cannot cause any general industrial expansion in other parts of the city; again, no explanation

is forthcoming as to how the closing of this block would tend to satisfy the desire for industrial expansion or conform with the nonexistent ''over-all plan.''

''If any ''over-all plan'' had been adopted or had attained even a tentative form it should have been shown to the court so that a finding relating to such plan would have had some reference to the evidence.

The relator in this action is the president of Southern Service Company, which owns the land on both sides of Commercial Street directly across Palomares Street from Fairbanks, Morse & Company's property and has operated a laundry thereon for more than 25 years. Although the company would gain by the abandonment of the street between its two properties, it, through its president, opposes such action. He testified to the inconvenience in the operation of his company's trucks and to the retail customers who bring in and call for their laundry, such traffic being compelled to travel around the closed block instead of going directly along the street.

In addition to the findings above discussed the court found that the members of the city council acted in good faith and without fraud or collusion with any person, firm or corporation. Such finding applies to the motive of the council and its members in ordering the block to be vacated and abandoned. However, motive and purpose are not synonymous. (*People v. City of Los Angeles*, 62 Cal.App. 781, 787 [218 P. 63].) A person's motive is any consideration or object promoting or inciting a choice; his purpose is that which he sets before himself as an object to be attained; the end or aim to be kept in view in any plan or operation. (Webster's New International Dictionary (2d ed.).)

Although the motive of the city council may have been, as testified by its members, to benefit and advance the interests of the city, nevertheless the purpose and object of the abandonment proceedings were to give the land occupied by the street to Fairbanks, Morse & Company. That the company's interest in the matter was motivated by the personal advantage resulting to it rather than by its concern in the welfare and convenience of the public is manifest from the evidence. It owns the property on both sides of the street and will become the owner of the street free of the public easement. It petitioned the council to abandon the block offering to pay all expenses of the vacation proceedings and of the rerouting of all public utilities and a cash consideration equal to the

reasonable value of the property as well. Upon ascertaining that payment to the city for the land occupied by the street would render the proceeding void (see *People* v. *City of Los Angeles, supra,* 62 Cal.App. 781, 790) that part of the offer was withdrawn. The company's attorney approved the resolution as to form. The only property included in the assessment district was that owned and controlled by the company and the members of the city council had knowledge of that fact at the time of the adoption of the resolution of intention to vacate the block.

Conceding that in the absence of a showing of fraud or collusion the motives of the members of the city council cannot be inquired into, nevertheless, since the law deals with results and not with mere forms, the purpose to be accomplished and the object attained may always be, indeed must be, considered in determining the validity of an ordinance vacating a public street. (*Kansas City* v. *Hyde,* 196 Mo. 498 [96 S.W. 201, 205, 113 Am.St.Rep. 766, 7 L.R.A.N.S. 639]; *Smith* v. *McDowell,* 148 Ill. 51 [35 N.E. 141, 142, 22 L.R.A. 393].) In the Smith case the trustees of the village attempted to vacate a strip 5 feet wide and 85 feet long off the side of a street for the purpose of permitting its use by the adjoining owner as an area way in connection with the basement of his proposed building. The court, looking to the purpose and not to the motive of the trustees, declared that the municipal corporation held its streets in trust for the use of the general public without power of converting them to other uses. In *Pederson* v. *Town of Radcliffe,* 226 Iowa 166 [284 N.W. 145, 147], it is said that although courts will not ordinarily interfere with a legislative action of a town council in vacating a street or alley, yet where the council acts arbitrarily and without regard for or against the interest of the public its action in attempting to vacate a street will be declared invalid.

The court will look beyond the recitals in the resolution and beyond the declarations of the members of the city council and will examine the results and the surrounding circumstances to learn the real purpose of vacating a street. (4 McQuillan Mun. Corp. (2d ed.), § 1520; *People* v. *City of Los Angeles, supra,* 62 Cal.App. 781, 791-2.) The court may and should inquire whether the purpose of an ordinance vacating a street is to serve a public benefit or a private use. (*Ligare* v. *City of Chicago,* 139 Ill. 46 [28 N.E. 934, 936, 32 Am.St. Rep. 179]; *People* v. *Corn Products Ref. Co.,* 286 Ill. 226 [121 N.E. 574, 577]; *Moskal* v. *Catholic Bishop,* 315 Ill.App.

461 [43 N.E.2d 206, 211].) Where the city sought to condemn land for the widening of a street sufficiently to permit the laying of railroad tracks, the court held that the result,— the effect of the act of the city council—was the exclusion of the general public from a portion of a public street. While such purpose was not expressed in the ordinance, the court looked to the result and declared the ordinance void. (*Ligare* v. *City of Chicago, supra.*) In *Corcoran* v. *Chicago, M. & N. R. Co.,* 149 Ill. 291 [37 N.E. 68], the facts are similar to those in the Ligare case. The ordinances were held void on the ground that municipal authorities have no power to vacate a public street for the sole benefit and use of a private individual or corporation. The same ruling was made in *Texas Co.* v. *Texarkana Machine Shops,* (Tex.Civ.App.) 1 S.W.2d 928, 931. Land cannot be condemned by a city for a public street when the actual purpose is, after acquiring the property, to permit the construction of railroad tracks thereon which will practically exclude the public from the use of the street. (*Kansas City* v. *Hyde,* 196 Mo. 498, *supra,* 96 S.W. 201, 204.) A city cannot vacate a portion of a street for the purpose of correcting deficiencies or errors in the claim of one who asserts title to the street and who requests the abandonment for the purpose of perfecting his title. (*DeLand* v. *Dixon Power & L. Co.,* 225 Ill. 212 [80 N.E. 125, 126-7].)

A street may not be abandoned for the purpose of inducing a person to establish a lumber yard or any other business (*City of Colome* v. *Von Seggern Bros. & Ludden,* 56 S.D. 390 [228 N.W. 800, 801]) or in order to permit the erection of a building on a portion of an alley (*Van Witsen* v. *Gutman,* 79 Md. 405 [29 A. 608, 24 L.R.A. 403]) although in return therefor the city would receive a lease or a conveyance of part of the building for public use. (*Horton* v. *Williams,* 99 Mich. 423 [58 N.W. 369, 371].) In an action brought by a city to close an alley where it was intended to allow the land to revert to a private individual who offered to pay $2,000 therefor, the court held that a cash consideration to be paid to the city is not a public use for which private property may be taken from one citizen and transferred to another. (*City of Louisville* v. *Bannon,* 99 Ky. 74 [35 S.W. 120, 121].)

In all the cases above cited the courts looked not to the motives of the municipal authorities but to the inducing cause of their action, the purpose of the proceedings and the result that would follow the vacating of the street, to wit, the donation of a public highway to private individuals for their per-

sonal use and the exclusion of the public therefrom. The advantage that is derived by the public from the abandonment of a street must arise from the vacation itself rather than from the use to which the property will be put and unless the closing of the street will inure to the public service or necessity or will promote the public interest, convenience and welfare the proceedings will be annulled. (*Horton* v. *Williams, supra; Van Witsen* v. *Gutman, supra; Ligare* v. *City of Chicago, supra.*)

A comparison of the facts in the instant case with those in *People* v. *Los Angeles, supra,* 62 Cal.App. 781, will show that the proceedings now before this court cannot be sustained without overruling the Los Angeles case. The only difference between the two cases is that in the Los Angeles case the company which benefited by the vacation of the street paid the city a cash consideration for the land it would have received, and in the instant case no such payment was made, although it was offered when the petition for abandonment was filed. In each case the street was improved and the roadway and sidewalks were used for general public travel; the company owning the property on both sides of the street petitioned for the abandonment; the public received no benefit or advantage from the closing of the street but on the contrary was deprived of the use of a street that had been improved at the expense of the property owners; the purported purpose of vacating the street was to promote industry in the city "as a whole," to encourage the maintenance and building up of industry for the mutual benefit and advantage of the city and its inhabitants. The payment to the city for the land was not the only reason for invalidating the proceeding in the Los Angeles case. In that case the court said that the statement in the final ordinance of vacation that "there are no damages, costs, or expenses arising out of said work and that no assessment is necessary for said work" supplied the inference that "the entire scheme was for the sole benefit of the defending" corporation. The resolution in the instant case declares that "it appears that no assessment of benefits or damages on account of said work or improvement is necessary." The opinion in the Los Angeles case states that the city council did not contemplate any rearrangement of public streets or any other public improvement that would necessitate or render advisable the vacation of the street, and that the result would be that the street would be taken from the public and nothing of a public nature substituted in its place. The last statement

is applicable to the instant case. The interest, convenience and welfare of the public in each case were rendered non-existent by the purpose and object of aiding a private corporation which would gain title to the abandoned street.

In the cases cited in the majority opinion the court did not distinguish between the motives of the city officials and the purpose and object of the abandonment proceedings. In *People* v. *City of Oakland*, 96 Cal.App. 488 [274 P. 438], the appeal having been on the judgment roll, the review of the case was confined to errors appearing therein and the sufficiency of the evidence did not arise. The city sought to condemn land for the extension of two streets through a parcel of real property, the owner of which offered to donate the two strips to the city and to pay the cost of paving and other improvement thereof if the city would abandon a parallel street already in existence, three streets not being required in the vicinity but would hamper industrial development. On this showing it was found that the abandonment of the street in question was for the purpose of rearranging the streets to serve more adequately the public needs and convenience. In *People* v. *City of San Rafael*, 95 Cal.App. 733 [273 P. 138], the closing of the street in question was a part of a general plan of improving street conditions and rerouting traffic in the vicinity of the railroad station and tracks (p. 736). The general plan to be followed is shown by the record and is discussed in the opinion. In the instant case no land is substituted for the abandoned street, there is no rearrangement of streets and no general plan to improve traffic conditions. In *Beals* v. *City of Los Angeles*, 23 Cal.2d 381, 387 [144 P.2d 839], the court held that the closing of a part of an alley which left the plaintiff's property fronting on a cul-de-sac resulted in the taking or damaging of private property for public use and that the complaint which recited those facts stated a cause of action for damages.

Since the record is devoid of evidence of facts in support of the findings, the judgment should be reversed with directions to the trial court to make findings and to enter judgment in favor of plaintiff.

A petition for a rehearing was denied December 9, 1948, and the following opinions were then rendered.

MOORE, P. J.—Appellant fervently assigns four reasons why a rehearing should be granted and a different judgment

entered. A studied consideration thereof readily develops the unsoundness of such contention.

It is urged that the majority opinion herein ignored the rule that reviewing courts will nullify the decision of a city council which is arbitrary or a gross abuse of discretion, citing *People* v. *City of Los Angeles,* 62 Cal.App. 781 [218 P. 63]; *People* v. *City of San Rafael,* 95 Cal.App. 733, 739 [273 P. 138]; *People* v. *City of Oakland,* 96 Cal.App. 488, 496 [274 P. 438]. Such contention is wholly gratuitous. While recognizing the existence of such rule and its correct announcement by the cited authorities this court deems itself bound by the universal doctrine of appellate procedure which precludes it from reversing a trial court's conclusions of law unless they are shown to be erroneous. In the instant action the court had concluded that "Commercial street . . . has been duly and lawfully closed by the duly constituted authorities of the city of Pomona in the valid exercise of the discretion conferred upon them by law." This conclusion logically followed the finding that "the members of the council . . . acted in good faith, and without fraud, collusion or connivance . . . or any abuse of discretion." Appellant asserts that there is no evidence that the council had *not* abused its discretion. That is immaterial. The issue before the trial court was: Did the council abuse its discretion? The finding was in the negative. Appellant has the burden now to demonstrate that sufficient evidence was produced before the trial court to require a finding of the city council's abuse of discretion. This it has utterly failed to do. Consequently, such attack upon the finding of the council's good faith must fail. This conclusion conforms with appellant's cited decisions, *supra.* In each of them the findings and conclusions were sanctified by the affirmation of the judgments therein.

The second contention is that "the vacating of a public street in order to give the vacated portion to a private corporation for its own use is not in the public interest." While this is a correct statement of abstract law, it is entirely irrelevant to the instant factual situation. Inasmuch as the trial court found that the vacating of the street was "solely for and in the interest of the public necessity, interest and convenience," appellant's statement that the act of the council was "in order to benefit a private corporation," is a conclusion without either a major or a minor premise, and is immaterial to the considerations on appeal.

The third contention is that "there is no substantial evidence to support either the finding of the trial court that 'the elimination of traffic over the portion of the street was and is promotive of the public safety and welfare' or that the vacating and abandoning of said portion of the street 'was and is required by the public interest and convenience.' " The majority opinion amply demonstrates that such findings are supported by the testimony of responsible witnesses. The findings attacked by Mr. Justice Wilson in his dissenting opinion as not being supported were a recital of the findings of the city council, whereas the findings approved by the majority opinion were those which determined that the city council did not act arbitrarily or discriminatorily. Such were the only findings essential to an approval of the council's action and are the only findings reviewable on this appeal.

Finally, contrary to appellant's contention, the majority opinion herein does not overthrow or disregard *People* v. *City of Los Angeles,* 62 Cal.App. 781 [218 P. 63]. It is readily distinguishable from the case at bar. In addition to the features of that decision noted in the majority opinion, other distinctions are readily observed. There the trial court had found that the public interest, necessity, and convenience were *not* served by closing the street; here the court found that such interests were promoted. There "according to the evidence and findings . . . there was no such thing as the public interest or convenience of the public taken into consideration by the city council." Here the council acted "solely" in the public interest. There the city engineer recommended that the street be not vacated; here the engineer recommended that the street be closed. There the council acted adversely to his recommendations; here the council followed the recommendations. There the trial court found against the validity of the council's act; here the trial court found in favor of the validity of the council's decision. There the "determination by the city council . . . was made before any protest was even filed and of necessity before any hearing was had thereon"; here protests were filed and a hearing thereon was held before the council's action. There the "ordinance of vacation of the street contained no declaration or provision, either in substance or effect that the public interest or convenience of the city of Los Angeles or of the inhabitants thereof, either required or justified the vacation of the street";

here the resolution of the city council expressly contained such and similar provisions and declarations.

McComb, J., concurred.

WILSON, J.—I dissent from the order denying a rehearing and adhere to my dissenting opinion filed upon the original submission of this case. The opinion of the majority of this court denying a hearing does no more than reaffirm and emphasize their errors in their opinion sustaining the judgment of the superior court. The vice of both opinions is that the majority have accepted the findings of the trial court as being based on evidence of facts, whereas, as pointed out in my dissent, the evidence of the city officials did not assert statements of fact but consisted entirely of opinions which had no facts for their support. There are no facts that sustain the finding that the city council did not abuse its discretion in ordering the closing of one block of a street which is a mile in length. There is not only no substantial evidence but there is no evidence at all to sustain the findings. The members of the council, when called into court to justify their action, expressed their *opinions* that the closing of the block would expand the industries of the city, but the record may be searched in vain for a single statement of fact upon which the court could base a finding to that effect. Nevertheless, the trial court and the majority of this court have accepted those opinions as evidence of the fact that the closing of the street will permit the establishing of more and greater manufacturing industries, notwithstanding the uncontradicted evidence that all property within several blocks of the land donated to Fairbanks, Morse & Company is already occupied by industrial plants. There was no evidence that there was even a remote prospect that any new industry would be located at any point in Pomona as a result of closing the street, or otherwise.

The vacating of a public street in order to give it to a private corporation is not in the public interest, as pointed out in my former dissenting opinion. The majority agree with this statement as one ''of abstract law'' but say it is irrelevant to this cause because, forsooth, the trial court found that the closing of the street was solely in the public interest. The majority did not in their previous opinion and does not now point to any evidence in support of the finding, and there is none. The evidence is that the members of the public who

previously traveled directly along the street are now compelled to go around the block, making four right angle turns in so doing. All members of this court have repeatedly joined in opinions reversing judgments because they were not sustained by evidence of facts and because the trial court had erroneously received opinion evidence. Why should this case be an exception to the rule?

The statement in the majority opinion that the findings attacked in my dissenting opinion were a recital of findings of the city council and that the findings approved by the majority were those of the court demonstrates that the majority have not read the dissenting opinion or have missed the point. I made no attack on the findings of the council but made it clear that my objections were to the findings of the court. In the second paragraph of my opinion I stated the findings of the trial court that were not supported by the evidence. This was followed by a discussion of both the findings of the court and the findings of the city council as stated in its resolution and the testimony given in court by members of that body. Both their resolution and their evidence were shown to have been expressions of opinion with a total absence of facts. I made no attack on the findings of the council for the obvious reason that appellants' argument was addressed to the findings of the court.

The majority now vainly attempt to negate the fact, as pointed out in my dissent, that their opinion disregards and disavows in its entirety the decision in *People* v. *Los Angeles,* 62 Cal.App. 781 [218 P. 63]. Their effort to distinguish this case from the Los Angeles case is based on the fact that in the instant case the findings of the trial court sustained the action of the city council while in the Los Angeles case the court found in favor of the plaintiff. The majority have not taken the time to point out in what manner this difference in the result of the actions affects the law as announced in the Los Angeles case. The facts in the two cases are parallel. It would be difficult for any court to formulate an argument sustaining opposing statements of law on identical facts. In each case the street was vacated in order that the corporation owning property on both sides might have the ownership and use of it for private purposes and personal gain; the announced purpose of closing the street was to promote industry in the city as a whole and to encourage the maintenance and building of industry for the benefit of the city and its inhabitants; the city officials gave their opinions to that

effect; the street had been improved and had been used for public travel; the public was excluded and the corporation was given uninterrupted possession. The original opinion of the majority and their opinion denying a rehearing are strangely devoid of any attempt to reconcile their statements of law with those in the Los Angeles case, yet they solemnly announce that they do not disagree with the decision in that case and disavow their intent to "overthrow or disregard" it.

In both of their opinions the majority have failed to distinguish between motive and purpose. The difference is important in a case of this character. Their discussions have revolved around the motives of the city council and have ignored the purpose of the abandonment proceedings. While the motives may have been good yet if the purpose was an abuse of discretion or if it redounded against the public interest, as is the case in the instant proceeding, the action of the council should be set aside. (*People* v. *Los Angeles,* 62 Cal.App. 781, 787-9 [218 P. 63].) I pointed out in my dissent that the cases relied on by the majority did not distinguish between the motives of the city officials and the purpose of the abandonment proceedings and that they were so factually different from the instant case that they did not sustain the majority opinion. If there be any advantage to the public from the vacating of a street it must come from the vacation itself and not from any future use of the vacated property. (*People* v. *San Rafael,* 95 Cal.App. 733, 740 [273 P. 138]; *People* v. *Los Angeles, supra,* at p. 789; *Horton* v. *Williams,* 99 Mich. 423 [58 N.W. 369].)

Since the result of the abandonment proceedings is to create two dead-end streets where one through street existed previously, it strains one's credulity to accept the court's finding that the public interest is served by the vacation proceedings.

The petition for rehearing should be granted and the judgment should be reversed with directions to enter judgment for plaintiff.

Appellant's petition for a hearing by the Supreme Court was denied January 10, 1949. Carter, J., voted for a hearing.