[Civ. No. 13894. First Dist., Div. One. Apr. 15, 1949.]

GEORGE H. CONSTANTINE et al., Appellants, v. THE CITY OF SUNNYVALE et al., Respondents.

JOSEPH VIERRA et al., Appellants, v. THE CITY OF SUNNYVALE et al., Respondents.

DiMaria & DiMaria for Appellants.

Joseph A. Bonacina, Rankin, O'Neal, Luckhardt, Center & Hall and Maurice J. Rankin for Respondents.

WARD, J.—This is an appeal by each plaintiff from judgments in favor of defendants in two consolidated cases decreeing that plaintiffs are not entitled to the declaratory relief, injunction or damages prayed for in each complaint. The case may be termed as one "in inverse condemnation" (*Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818]) wherein plaintiffs sought to vacate and set aside an order of the defendant city of Sunnyvale abandoning a portion of a street or avenue and asked that the municipality and defendant Libby, McNeill and Libby, a corporation (which will be referred to as Libby), be enjoined from obstructing the avenue from travel and prayed that five designated combinations of plaintiffs in the Constantine action and two in the Vierra action be awarded damages should the court deny the respective prayers to set aside the order of abandonment and enjoin the obstruction.

Each complaint set forth two causes of action. In the first cause of action in the Constantine complaint it was alleged that the Libby corporation had petitioned the Sunnyvale City Council to close 426 feet of Pastoria Avenue; that on either side of the avenue a portion of the property was owned by Libby; that at a hearing of the council the designated portion was closed over the objections of plaintiffs; that the order of the council was for the benefit of Libby and damaged defendants' property by depriving them of an easement of ingress and egress to a street on the other side and running parallel to certain railroad tracks. The second cause of action in the Constantine complaint alleged the market value of the respective properties of the plaintiffs before and after the closing of the avenue. The Vierra complaint in the first cause of action set forth similar allegations of fraud by collusion between Libby and the council. The second cause of action set forth the alleged value of the property as the result of closing the avenue.

Defendants filed separate answers to each complaint denying the material issues raised and alleged that the claim for liability had not been filed within the time prescribed by law.

On appeal plaintiffs' five points are in effect that in ordering the closure the council acted fraudulently and with the

purpose of benefiting Libby, and that plaintiffs were not awarded compensation for their inconvenience and the depreciation of the market value of their property.

A jury was sworn to try the case, but at the end of the introduction of evidence the trial court concluded that plaintiffs had not made out a case and dismissed the jury. Insofar as the action was one in equity, this, of course, the trial court had a right to do. Thereupon the court filed findings and conclusions of law upon which the respective decrees and judgments are based.

The court found, ''That all of the properties mentioned in the complaints . . . abut upon that portion of Pastoria Avenue lying and being outside of the city limits of the city of Sunnyvale and being in the county of Santa Clara, and that none of the same abutted upon any portion of the street taken by the order of the City Council vacating and closing the same to public use. In this connection, the court further finds that Pastoria Avenue, as it presently exists, furnishes the owners of said properties with ingress to and egress from their said respective properties. That at the time plaintiffs became the owners of their respective properties said Pastoria Avenue was open as a public way for its entire length including the portion thereafter ordered closed by the City Council of Sunnyvale.

''The Court finds that it is not true that the purpose or result of the ordinance of the City of Sunnyvale closing Pastoria Avenue was to promote the interest of Libby, McNeill & Libby as alleged by Plaintiffs, or otherwise, or at all; that the motive and purpose of the Council of the city of Sunnyvale in passing the ordinance closing said Street was to carry out a plan which said Council had long entertained for the reorganization of certain streets in the city of Sunnyvale to, in the interest and promotion of public convenience and safety, eliminate crossing over the railroad tracks of the Southern Pacific Company by closing certain streets which crossed said tracks, including Pastoria Avenue, and thereby eliminate the danger and hazard of said railroad crossings; that said ordinance was passed to promote public convenience and safety and was without fraud or collusion with Libby, McNeill & Libby, or at all, and was an honest exercise of the discretion of said Council relating to the streets of said city and was enacted solely in the interests of the safety, convenience and good of said city and the general public, and not otherwise.

"The Court finds that in lieu of the portion of Pastoria Avenue closed to travel by the ordinance herein mentioned said city has provided those having property on Pastoria Avenue, and who could possibly be affected by such closing, with a better and safer route of travel by the extension of California Avenue from Matilda Avenue to Pastoria Avenue and the said extension of California Avenue permits all the plaintiffs and others on said Pastoria Avenue to reach the main business and residence sections of the City of Sunnyvale by a safer and equally short route and does not materially add to the distance of those on Pastoria Avenue desiring to make use of the portion of Evelyn Avenue lying west of Pastoria Avenue and adds to their safety of travel."

"The court does not deem it necessary to find the value of the properties of any of the plaintiffs prior to the closing of Pastoria Avenue as the court finds that such closing has not depreciated the value of any of said properties in any respect or amount, and plaintiffs have not, nor have any of them, sustained any damage by reason of said closing."

There is some evidence that one or more of the councilmen had worked for Libby or were on friendly terms with the managers of the local plant. There is also a claim that at the meetings of the council the presiding officer was abrupt in dealing with plaintiff property owners. The attitude and credibility of the witnesses is not a matter that a reviewing court is called upon to decide. All of the councilmen, on being asked what factors they considered in determining whether or not the council should vacate that portion of the avenue, testified in substance, "In a general way I attempted to pass on the matter on the basis of the greatest good for the greatest number, and specifically I considered a closing of a railroad crossing, which was in my opinion hazardous, the elimination of a bottleneck which existed at the times when Libby was busy on Pastoria, the accomplishing of an increase of employment of people residing in the City of Sunnyvale, and an addition to the tax appraisal, thereby enlarging the City income; and, as against that, I considered what harm might come, and being of the opinion that there was a great deal more good involved to more people than could possibly be harm, I decided it would be to the best interest of the City of Sunnyvale to undertake that closing." Maps and recommendations of the Peninsula Grade Crossing Conference which had been delivered to the city engineer of

Sunnyvale indicated that the crossing of Pastoria Avenue over the railroad track was superfluous. The Commissioner of Public Health endorsed the plan to close certain crossings. A small avenue was opened to an adjoining street which gave a means of travel to the next street on which train signals were operated.

Plaintiff has cited authorities from other juirsdictions which are claimed to control the facts of this case, notably *City of Texarkana* v. *Lawson* (Tex.Civ.App.), 168 S.W. 867. There is some resemblance between the Texarkana case and the facts of the present case. In that case it was held that compensation may be recovered to the extent of depreciation. That rule is recognized in California, but in the present case plaintiffs are not entitled to recover.

■ A street may not be vacated for exclusive private use. (*People* v. *City of San Rafael*, 95 Cal.App. 733 [273 P. 138] ; *People* v. *City of Los Angeles*, 62 Cal.App. 781 [218 P. 63].) However, if an abutting property owner is benefited by closing a street such order may be a mere incident if the controlling purpose was the convenience of the general public and, as in this case, their safety. (4 McQuillan, Municipal Corporations (2d ed. 1943) § 1520, p. 344. See *People* v. *City of Pomona*, 88 Cal.App.2d 460 [198 P.2d 959] and opinion on denial of rehearing, 88 Cal.App.2d 475 [200 P.2d 176].) In *People* v. *City of San Rafael, supra,* at page 740 the court said, ''It is, of course, true that a city cannot 'barter' away its streets. And it has been held that the advantage coming to the public from vacating a street must arise from the vacation itself, and not from the future use to which the vacated property is put. . . . The evidence showing the elimination of a dangerous grade crossing, where two grade crossings are in such close proximity, and the doing away of the public inconvenience of having both crossings blocked by stopping trains, are advantages directly accruing from the street closing. And that these facts were considered by the City Council is of itself, irrespective of any other consideration, sufficient to support the finding of the court that the City Council was not induced to this closing solely by the desire to turn the land over to the railroad company, but was actuated by considerations of the public good. This is especially true in view of the testimony showing the general plan of street improvement in that vicinity, the relation of Ida Street to the other streets, the traffic conditions, and the comparison of the resulting inconvenience with the benefits

to the public at large." In the present case the elimination of a dangerous grade crossing as a part of a general plan of street improvement indicates proportional advantages directly accruing to the public paramount to the profit that might be gained by Libby.

 The question of the elimination of grade crossings is a matter of state concern (Code Civ. Proc., § 1240; *City of San Mateo* v. *Railroad Com.,* 9 Cal.2d 1 [68 P.2d 713]; *Polk* v. *City of Los Angeles,* 26 Cal.2d 519 [159 P.2d 931]), but the vacation of public streets falls within the scope of municipal affairs and it may be made without consent of the Railroad Commission unless it interferes with the operation of a railroad. (*Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441 [166 P. 351].)

Plaintiffs claim that they have suffered a violation of the "next intersection rule" and are entitled to damages. "The rights of an abutting owner to access to the street are the same whether his property is situated on a street in the business district of a large city or in the residential district of a small town. The extent of the damage for interference therewith might be different, but the right of access to the street would be the same." (*Rose* v. *State of California,* 19 Cal.2d 713, 730 [123 P.2d 505].) In *Beals* v. *City of Los Angeles,* 23 Cal. 2d 381 [144 P.2d 839], relied upon by plaintiffs, it is stated at page 384 that, "Although plaintiff's property does not abut upon the vacated portion of the alley, she is deprived of all access by means of the alley to the next intersecting street to the west, thus leaving the property in a cul-de-sac." The Beals case is based upon *Bacich* v. *Board of Control, supra,* in which it was held that a property owner has a right of ingress or egress to any intersecting street and in which it is stated (p. 352) that, "Whether or not such impairment is compensable must depend upon the character and extent of his easement of access. . . . Practically all authorities hold, and we believe correctly, that no recovery may be had where the obstruction is beyond the next intersecting street. (See cases cited: 4 McQuillin, Municipal Corporations (2d ed.), 279-280, sec. 1527; 1 Lewis on Eminent Domain (3d ed.), 350, 383, secs. 191, 203; 25 Am.Jur., Highways, sec. 318; 49 A.L.R. 330; 93 A.L.R. 639.) The extent of the easement of access may be said to be that which is reasonably required giving consideration to all the purposes to which the property is adapted."

■ In the present case the closing of Pastoria Avenue has not created a "cul-de-sac." It is not a blind alley or avenue for a small extension street was placed so that plaintiffs and the general public might travel by way of the extension to another avenue leading directly to the avenue from which plaintiffs claim they have been debarred. In determining whether a street shall be closed but an extension added giving the property owners the right to gain access to a parallel street a city council is acting legislatively and in the absence of abuse of discretion courts will not interfere. (*Brown* v. *Board of Supervisors*, 124 Cal. 274 [57 P. 82]; *Beals* v. *City of Los Angeles, supra*; 4 McQuillin, Municipal Corporations (2d ed. 1943) § 1527, p. 360-361.)

■ The trial court found that the claim against Sunnyvale was not filed in time. Plaintiffs seek damages against Libby upon the theory that that company is obstructing the street. Where an order closing a street has resulted in damage to an abutting property owner the governmental agency authorizing such closing is liable for damages for the exercise of such authority and not a person or corporation who may have been benefited by the order closing the street unless collusive fraud is apparent from all of the facts and circumstances surrounding the transaction. (*Heimann* v. *City of Los Angeles*, 30 Cal.2d 746 [185 P.2d 597]; *Veterans' Welfare Bd.* v. *City of Oakland*, 74 Cal.App.2d 818 [169 P.2d 1000].)

The judgments appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied May 14, 1949, and appellants' petition for a hearing by the Supreme Court was denied June 13, 1949. Carter, J., and Schauer, J., voted for a hearing.