[Civ. No. 11651.    Third Dist.    Feb. 3, 1969.]

PALO ALTO INVESTMENT COMPANY et al., Plaintiffs
and Respondents, v. COUNTY OF PLACER, Defendant
and Appellant.

364

Richard V. Smith, County Counsel, and L. J. Dewald, Deputy County Counsel, for Defendant and Appellant.

James K. Norman for Plaintiffs and Respondents.

FRIEDMAN, J.—Old Rubicon Road is an unimproved trail

or roadway traversing mountainous areas of Placer and El Dorado Counties. It runs southwesterly from State Highway 89, near Lake Tahoe in Placer County, winds over the Sierras and eventually terminates in Georgetown, El Dorado County. Both plaintiffs and Placer County claim ownership of a 400-foot segment of the roadway near its point of commencement. In that area the road consists of an undulating, dirt trail about 12 feet in width. The trial court quieted title in plaintiffs. The county appeals.

In 1958 plaintiffs were the owners of a tract of land crossed by Old Rubicon Road near its point of beginning at State Highway 89. They submitted a proposed subdivision map to the county. The map called upon the subdividers to install an improved 60-foot street superimposed upon Old Rubicon Road with minor changes in alignment. The county officials had been informed that the state had long-range plans for moving State Highway 89 southward, where it would traverse plaintiffs' property. Old Rubicon Road, as improved by the subdividers, would cross the new highway at a curve, thus creating a dangerous highway condition. It was desirable, then, that Old Rubicon Road cross the proposed highway somewhat to the east.

As the result of an informal agreement with the county planning staff, plaintiffs filed a new map. That portion of Old Rubicon Road running southerly from existing State Highway 89 would dead-end within the subdivision, separated from the proposed new state highway by Lot 22 of the subdivision. Old Rubicon Road would resume on the other side of the new state highway, at a point approximately 400 feet south of the dead end. The subdividers would install a new street which would restore the connection between the two portions of Old Rubicon Road. The new street, called Rubicon Avenue, would leave Old Rubicon Road at a point somewhat north of the dead end, then pursue a semicircular route, crossing the proposed state highway 700 feet to the east and curving westerly to rejoin Old Rubicon Road at its recommencement, about 400 feet south of the dead end. Part of the new street would traverse a corner of El Dorado County. Plaintiffs agreed to modernize that portion of Old Rubicon Road within the subdivision and to install Rubicon Avenue as a paved street. The county would pay one-third of the cost of constructing Rubicon Avenue. In order to assure uninterrupted access to the proposed new state highway route, the county requested and received a temporary road easement across Lot

22. The trial court found, in accordance with a pretrial agreement, that the temporary easement was to terminate upon the completion of Rubicon Avenue.

The subdividers' map was accepted by the county and plaintiffs performed the specified street work. They improved that portion of Old Rubicon Road within the subdivision. They constructed Rubicon Avenue as a 60-foot paved street. For the latter purpose they sought and received approval from El Dorado County. Plaintiffs paid $6,000 and Placer County $3,000 of the construction cost of Rubicon Avenue. Upon completion, these streets were inspected, approved and accepted by the county and became a part of the county road system. From its point of departure until it rejoins Old Rubicon Road to the south, Rubicon Avenue is .2 mile longer than the comparatively straight path of the former. Nothing ever came of the state's plan to relocate State Highway 89.

In dispute here is the 400-foot strip of Old Rubicon Road southward from its dead end within the subdivision to the point where it is rejoined by Rubicon Avenue. Included in the disputed segment is the easement over Lot 22, which plaintiffs had temporarily transferred to the county. No formal proceedings for the abandonment of the disputed segment ever took place. The trial court found that the county's conduct equitably estopped it from asserting ownership. The county urges that it may not be divested of this segment of roadway without the formal abandonment provided by the Streets and Highways Code, citing *County of San Diego* v. *California Water etc. Co.*, 30 Cal.2d 817 [186 P.2d 124, 175 A.L.R. 747].

■■ Equitable estoppel is available against the government where justice and right require it; existence of an estoppel is generally a question of fact for the trial court, whose determination is conclusive on appeal unless the opposite conclusion is the only one reasonably available from the evidence. (*Driscoll* v. *City of Los Angeles,* 67 Cal.2d 297, 305-306 [61 Cal.Rptr. 661, 431 P.2d 245].) ■■ In support of its finding of estoppel the trial court found that Placer County officials had expressly and impliedly represented that the county would not in the future assert a property interest in the disputed strip and would, by summary proceedings, perform all acts necessary to relocate Old Rubicon Road; that in reliance upon these representations plaintiffs not only submitted a revised map, but acquired property interests and constructed road improvements which have now been incorporated into the county road system. The court also found that

through the construction of Rubicon Avenue, the relocation of Old Rubicon Road became ''an accomplished fact.''

According to these findings, the subdividers acceded to the county's request for street work beyond that contemplated by their original proposal in order to protect the state's highway project and the county's road interests. The county would now take advantage of the state's withdrawal of its highway project in order to implant a 12-foot public easement through plaintiffs' subdivision lots. Such conduct does not conform to the standard of ''rectangular rectitude'' expected of public bodies. (*Farrell* v. *County of Placer,* 23 Cal.2d 624, 628 [145 P.2d 570, 153 A.L.R. 323].) Although the county's briefs bite at the edges of these findings, the county has shown no lack of substantial evidence to support them. Rather, the county pins its appeal to the contention that formal, statutory action is the *sine qua non* of county road abandonment.

Streets and Highway Code section 901 declares that ''county highways, once established, shall continue to be county highways until abandoned by order of the board of supervisors of the county in which such highways are situated, by operation of law, or by judgment of a court of competent jurisdiction.'' The code then describes two separate procedures for abandonment by supervisorial order. One method is that delineated by sections 954 through 960 for ''unnecessary highways.'' That method includes formal notice, a public hearing before the board of supervisors and a recorded order of abandonment. The second method, available only when a county highway segment has been superseded by relocation, is described in sections 960.1 and 960.2. The latter provisions permit summary abandonment by means of a resolution of the board of supervisors, which is then recorded.[1]

In *County of San Diego* v. *California Water etc. Co., supra,* 30 Cal.2d 817, a utility firm invoked the doctrine of equitable estoppel against the county as the basis for an asserted right

---

[1]Streets and Highways Code, section 960.1: ''The board of supervisors of any county may retain or may summarily vacate and abandon any portion of a county highway which portion has been superseded by relocation, except in case such abandonment would cut off all access to the property of any person which, prior to such relocation, adjoined the highway.''

Streets and Highways Code, section 960.2: ''The board of supervisors may act to abandon any easement or to vacate any highway, mentioned in Section 960.1, by resolution. A certified copy of such resolution shall be recorded in the office of the county recorder. No fee shall be charged for such recordation. On such recordation the abandonment or vacation is complete.''

to flood a section of county road. The court adverted to settled case law holding that the statutory methods of county road abandonment are exclusive, that any attempt to dispose of a county roadway by contract will not be enforced. (30 Cal.2d at p. 823.) Recognizing the possibility of situations in which ''justice and right'' call for an estoppel against the county, the court held that estoppel could not be invoked where it would defeat the operation of a policy adopted to protect the public. (30 Cal.2d at pp. 825-826.)

Although open to interpretation, the *County of San Diego* case apparently poses no impassable barrier to abandonment by judicially pronounced estoppel. In *City of Imperial Beach v. Algert,* 200 Cal.App.2d 48, 52 [19 Cal.Rptr. 144], the Court of Appeal took the position that ''each case must be examined carefully and rigidly to be sure that a precedent is not established through which, by favoritism or otherwise, the public interest may be mulcted or public policy defeated.'' The court sustained an estoppel, observing that under the particular facts: ''There is no indication whatever of the possibility of favoritism or collusion.'' (200 Cal.App.2d at p. 52.) The Supreme Court denied a hearing.

The Supreme Court's denial of a hearing in the *Imperial Beach* case demonstrates that the San Diego decision does not rigidly reject abandonment by estoppel under all circumstances. Rather, the courts will look to the origin of the transaction, to determine whether estoppel is a disguised means of validating an illegal bargain for collusive transfer of the public's interest into private hands; or, to the contrary, whether estoppel is consistent with the statutory policy against covert divestiture of the public interest.

In the *San Diego* case, moreover, the court did not acknowledge the dual methods of abandonment provided by the Streets and Highways Code.[2] ▮ Where the road is an ''unnecessary highway,'' sections 954 through 960 require public hearings preceding the abandonment order, thus expressing a policy which forecloses privately negotiated bargains and demands public participation to protect the public's interest in free passage. That policy poses a high hurdle

---

[2] Neither did the court take note of section 901 of the Streets and Highway Code, which permits abandonment ''by operation of law, or by judgment of a court of competent jurisdiction,'' as well as by order of the board of supervisors. Whatever the interpretation of the quoted phrase, section 901 expressly acknowledges the possibility of judicially declared county road abandonment.

for claims of estoppel, because such claims might seek judicial validation of an originally collusive arrangement.

■ In the relatively narrow case of a road segment superseded by relocation, sections 960.1 and 960.2 authorize summary abandonment, that is, by resolution without prior notice and hearing. Such an abandonment does not threaten the public interest in continued availability of the route of travel, since the road continues along its relocated route. On the assumption that relocation has occurred in actual fact, the latter sections interpose no stringent policy hurdle against invocation of an estoppel.

■ The trial court found that the curving connection supplied by Rubicon Avenue made relocation "an accomplished fact." Conceivably, the substitution of a highly circuitous route for a relatively direct one may be a sham relocation. This is not such a case, for Rubicon Avenue is only .2 mile longer than the segment of the old road it replaced. (Cf. *People* v. *Goodin,* 136 Cal. 455, 458 [69 P. 85].) The trial judge's memorandum opinion reveals that the finding of relocation was made with awareness of the alternate abandonment procedure supplied by section 960.1. The court did not err in imposing an estoppel against the county.

■ The county argues that even for a summary abandonment, section 960.2 requires a resolution by the board of supervisors. Plaintiffs' claim does not rest upon a supervisorial resolution of abandonment, but upon an estoppel which bars the county from asserting lack of such a resolution (see *Youngman* v. *Nevada Irr. Dist.,* 70 Cal.2d 240, 249, fn. 7 [74 Cal.Rptr. 398, 449 P.2d 462] (multigraphed opinion, p. 12). The county concedes that it has no proprietary interest created by deed or dedication. ■ The public interest arose through long continued occupancy and use. A public interest so created reverts to the owner of the underlying fee upon relocation or other evidence of abandonment. (*Smith* v. *Ricker,* 226 Cal.App.2d 96, 99-100 [37 Cal.Rptr. 769]; see Sts. & Hy. Code, § 960.3.)

Judgment affirmed.

Pierce, P. J., and Regan, J., concurred.