[Civ. No. 28036. First Dist., Div. One. Jan. 24, 1972.]

ZELMA A. RATCHFORD, Plaintiff and Appellant, v.
COUNTY OF SONOMA et al., Defendants and Respondents.

**COUNSEL**

J. A. Ratchford for Plaintiff and Appellant.

Richard M. Ramsey, County Counsel, James P. Botz, Deputy County Counsel, and Passalacqua & Mazzoni for Defendants and Respondents.

## OPINION

**SIMS, J.** — Petitioner-appellant, the owner of property abutting upon a mapped subdivision road, which was offered for dedication to public use but never accepted, has appealed from a judgment, "Order Denying Petition," which denied her any relief after reviewing proceedings in which the board of supervisors, by resolution, ordered a triangular portion of a mapped road, upon which a corner of a residence had been constructed, abandoned upon finding that it was a part of a purported county road unnecessary for either present or prospective public use.

Preliminarily the respondents contend that the trial court had no jurisdiction to review the proceedings of the board of supervisors by petition for a writ of review. It is determined that the allegations of the petition in the trial court raised a jurisdictional question which authorized the issuance of the writ and that, contrary to the objection voiced by appellant before the board, the board did have jurisdiction to proceed to abandon a purported county road or abandon and terminate the right to accept an unaccepted offer of dedication. It is further concluded that the board exceeded its jurisdiction in purporting to abandon the right to accept the portion of the right of way in question because there was no evidence to show that it, as distinguished from the whole of the roadway, was unnecessary for prospective public use, and because there was no evidence to show any public interest or benefit, as distinguished from private gain to the proponent of the abandonment. The judgment denying relief must be reversed and the case is remanded with instructions to order the resolution void.

On October 8, 1908, a subdivision map was recorded for the Camp Rose subdivision. Madrone Avenue is delineated as running on a roughly west-east axis from the northwesterly portion of the subdivision where the portion of the road which the county purported to abandon lies. A certificate by the owner, dated September 10, 1908, recites, ". . . I . . . hereby *dedicate* to public use all the streets and avenues delineated on said map, to wit: . . . Madrone Avenue. . . ." The mortgagee of the property joined in the dedication on September 18, 1908. Nevertheless, a certificate of the county clerk states that on October 6, 1908, when the map was presented to the board of supervisors, it "did thereupon by resolution of said Board duly passed and adopted at said meeting *not accept* on behalf of the public [the named streets including Madrone Avenue]." (Italics added.) Although the county has entered upon and improved some of the eastern reaches of some of the streets, the portion of Madrone Avenue involved in these proceedings has never been accepted or approved by the county.[1]

---

[1]The map was apparently prepared and presented to the board of supervisors pursuant to the provisions of "[a]n act requiring the recording of maps of subdivisions

According to the report of the planning commission, which was part of the record before the board of supervisors and before the trial court, that portion of Madrone Avenue has the status of an open public way, privately maintained.

At some time, a number of years before 1968, a residence was constructed by the owner of lot 6 in block K of the subdivision, which lot abuts on the northerly line of Madrone Avenue and is one lot away from the westerly boundary of the subdivision.[2] Some time later, over a year before the filing of the petition which gave rise to these proceedings, a survey revealed that a portion of this residence protruded into Madrone Avenue. A plat shows that the southeast corner of the residence is constructed on the mapped street so that 20.97 feet of the southerly side of the residence, and 7.47 of the easterly side are in the avenue, thereby bisecting the northerly line of the street for a distance of 22.07 feet.

Corina Gallacci, the owner of the residence, caused to be prepared a "Petition for Abandonment of Portion of Madrone Avenue Upon Which a Portion of a Dwelling is Located" in which it is alleged, "That said portion of said roadway [referring to the foregoing encroachment] is unnecessary for present or prospective uses and has never been used as and for roadway purposes." The petition was signed on March 18, 1968 by ten alleged freeholders and taxpayers within the subdivision, of whom seven allegedly resided and owned property on Madrone Avenue. The petitioners requested a noticed hearing on the petition, and that at the hearing the

of land into lots for the purpose of sale, and prescribing the conditions on which such maps may be recorded and prohibiting the selling or offering for sale of land by reference to said maps unless the same are recorded" as approved March 15, 1907. (Stats. 1907, ch. 231, p. 290. Cf. Stats. 1893, ch. LXXX, p. 96, as amended by Stats. 1901, ch. CXXIV, p. 288.) Section 4 of the 1907 act provided as follows: "The map or plat so made, indorsed and acknowledged shall, if the same offers for dedication any highway, or portion thereof, be presented to the board of supervisors, board of trustees, city council or other governing body having control of public highways in the territory shown on such map or plat, and said governing body shall indorse thereon which of the public highways offered by said map or plat they accept on behalf of the public, and thereupon such highways as have been so accepted, and no others, shall be and become dedicated to the public use." (Cf. section 3 of the 1893 Act as amended 1901.) It is clear that Madrone Avenue did not become dedicated to public use by acceptance by the board of supervisors.

[2] The map used in the presentation before the board of supervisors reveals that at its western extremity Madrone Avenue turns south to, or is joined by the northern extremity of, Oak Street. The roadway runs 40 or 50 feet southerly and then runs easterly roughly parallel to Madrone Avenue. This street is not publicly accepted or maintained in its western reaches. It is not clear whether or not a county-maintained road, which appears to abut on the western boundary of the Camp Rose subdivision, actually furnishes access to Madrone Avenue and Oak Street.

board of supervisors make appropriate findings and an order for abandoning the described portion of the roadway.[3]

On April 1, 1968 the board of supervisors passed a resolution in which it acknowledged the receipt of the petition and provided that it be accepted and referred to the county planning commission for investigation and recommendation. The resolution also fixed a date for hearing on the petition and provided for the posting and publication of notices of the hearing, which were subsequently effected. (See Sts. & Hy. Code, § 958.)

On April 16, 1968 the engineering advisory committee of the planning commission made a report which erroneously sets forth that the offer of dedication *was accepted* by the certificate of the board of supervisors. It correctly stated that the portion of the road involved was not a county-maintained road, and that the width of the right of way for Madrone Avenue is shown as 24 feet on the subdivision map, and that the proposed abandonment would leave about 16 feet between the existing residence and the south line of the mapped right of way. The committee pointed out that it was doubtful whether the owners of lots along Madrone Avenue would ever be able to provide sufficient right of way for construction of road to current standards for inclusion in a county-maintained system;[4] but that nevertheless the reduction of the 24-foot avenue down to 16 feet would pose a problem in the future if adjacent owners desired to construct a private two lane roadway. Accordingly it was recommended that abandonment be denied unless an equal amount of useable right of way was acquired on the south side of the road and reserved for possible future roadways.

On April 18, 1968 the county planning commission adopted a resolution which recites, in pertinent part, ". . . the existing width of Madrone

---

[3]Streets and Highways Code section 957 provides: "Any ten freeholders, two of whom are residents of the road district in which some part of the highway affected is situated, and are taxable therein for highway purposes, may petition the board to abandon all or any part of any county highway."

Section 957.5 relates to the costs of the proceedings. Section 958 provides for fixing a time for hearing, and for giving notice of the hearing by publication and posting.

Section 959 reads: "The board shall, on the day fixed for hearing, or on the day to which the hearing is postponed or continued, hear the evidence offered by any party interested. If the board finds, from all the evidence submitted, that any county highway described in the petition, or any part of such highway, is unnecessary for present or prospective public use, the board may make its order abandoning such highway, or part thereof."

[4]The record contains a copy of a resolution adopted by the board of supervisors in 1957 from which it appears that generally before a street will be accepted for county maintenance it should have a right of way of 40 feet, a graded roadway of 26 feet, and an armour coat surface of 22 feet.

Avenue is necessary, now [¶] THEREFORE BE IT RESOLVED by the Planning Commission in regular session assembled this 18th day of April, 1968, that said Commission finds that since the privately maintained portion of Madrone is now open and used in front of this house and since any reduction in available right-of-way could add to future problems, abandonment is not recommended unless first an equal amount of usable right-of-way can be acquired by the petitioners on the south side of the road across from the existing house and received for possible future roadway."

On April 29, 1968 the matter came on for hearing before the board of supervisors (see Sts. & Hy. Code, § 959). A representative of the planning department outlined the facts, and presented the views of the planning commission. The attorney for the interested property owner explained the circumstances which gave rise to the filing of the petition. He pointed out that the granting of the petition would in no way change the physical location of the traveled portion of the right of way, which was 12 to 16 feet in width, nor would it impede existing traffic conditions in the road. He stated that there was no immediate change of Madrone Avenue in the projected road plan for the county. He indicated that since it was a dedicated road it was within the jurisdiction of the board of supervisors. The county director of public works stated he agreed with the remarks of the attorney.

Appellant, petitioner in the court below, appeared in opposition to the petition before the board of supervisors. She represented that she owned 11 lots on the road, that the road had electrical and water lines in it, and opined that with the development of the area the road should be upgraded and improved.

Two of the three supervisors who were present and the county counsel pointed out that the county would not incur any expense to improve the road (see fn. 4 above); that if it were ever to be improved to county standards it would have to be through an assessment district at the expense of the property owners; and that additional rights of way would have to be furnished by interested parties.

The attorney who represents appellant in these proceedings stated to the board that it did not have jurisdiction to abandon the portion of the road in question.

The board of supervisors voted to conclude the hearing, and adopted a resolution abandoning the portion of Madrone Avenue referred to in the original petition.[5]

---

[5]The resolution reads:
"WHEREAS, this Board of Supervisors has heretofore received a petition for the

On June 6, 1968 appellant filed her petition for writ of review in which she attacked the resolution of the board of supervisors on the following grounds: "1. That it was not established at the hearing nor was it determined in the Resolution that Madrone Avenue was or is a public road or a private way, and in this respect the Board lacked jurisdiction to order the road abandoned.

"2. That the Board exceeded and abused its discretion in ordering said abandonment.

"3. That the discretion of the Board was unlawfully, arbitrarily and unreasonably invoked for the sole purpose and benefit of, and the individual gain and unjust enrichment of the person requesting such vacation of a portion of the road her dwelling occupied.

"4. That the evidence on the face of the record shows that the sole object and purpose of the abandonment was not to determine the necessity of the road for present and prospective use.

"5. That the finding in the Resolution 'that the portion [of] Madrone Avenue described in Exhibit 'A' is unnecessary for either present or prospective use' is not supported by the evidence.

---

abandonment of a portion of Madrone Avenue pursuant to Section 957 of the Streets and Highways Code, a copy of which petition is attached hereto, incorporated herein, and marked Exhibit 'A', and

"WHEREAS, the petition was referred to the Planning Commission, whose recommendation has been heard by this Board and is now on file with the Planning Director, and

"WHEREAS, a duly noticed hearing was held before this Board at which all interested persons were allowed to hear and be heard on the matter, and

"WHEREAS, the Road Commissioner testified that the abandonment will in no way change the physical circumstances of Madrone Avenue and will in no way impede traffic conditions;

· "NOW, THEREFORE, BE IT RESOLVED that this Board of Supervisors finds, declares and determines as follows:

"1. That on October 6, 1908, this Board of Supervisors did reject the offer of dedication of Madrone Avenue as shown on the map of the Camp Rose Subdivision, recorded October 8, 1908, in Book 21 of Maps at Page 6, Official Records of the Recorder of the County of Sonoma.

"2. That Madrone Avenue is not a county road and at best can only be described as a purported county road as defined in Section 960.5 of the Streets and Highways Code.

"3. That the portion of Madrone Avenue described in Exhibit 'A' is unnecessary for either present or prospective public use.

"4. That that portion of Madrone Avenue described in Exhibit 'A' is hereby ordered abandoned.

"5. That nothing contained in this resolution shall be construed as an acceptance of any offer of dedication of Madrone Avenue.

"BE IT FURTHER RESOLVED that the Clerk shall deliver a certified copy of this resolution to the Recorder for recordation in his official records, all in accordance with Section 960 of the Streets and Highways Code."

"6. That the action of the Board in closing a portion of Madrone Avenue is a gross abuse of discretion and having been taken for the prime purpose of transferring said portion of highway to a private person without consideration is in excess of the jurisdiction of the Board.

"7. That the Board erred in overruling the remonstrance of petitioner."

The county filed points and authorities in opposition to those filed by the petitioner, and after the petitioner replied, the court, on August 1, 1968, filed an order for a writ of review to issue. On September 6, 1968 the clerk of the board of supervisors filed a return to which were attached copies of proceedings before the board and related matters. The case was erroneously dropped from the calendar September 16, 1968, but was subsequently, on August 28, 1969, submitted on the merits. On December 1, 1969 the court signed and filed its order denying the petition. The order recites, "The Court finds no evidence of fraud, arbitrary action or abuse of discretion in the proceedings conducted by the Respondent Board of Supervisors." The petitioner's motion for a new trial was denied and this appeal ensued.

The County of Sonoma, and the five members of its board of supervisors, have appeared through the county counsel. The proponent of the abandonment and one of the signers of the petition for abandonment, who were both named as respondents in the superior court proceedings, have appeared herein by their attorney, joined in the brief of the county and waived argument.

## I

Before considering the contentions raised by appellant, the respondents' assertion that the trial court erroneously issued a writ of review and reviewed the proceedings of the board of supervisors, must be considered. They assert that the abandonment of a highway by a board of supervisors pursuant to the provisions of section 957-959 is a legislative act, and that as such the proceedings cannot be reviewed by writ of review.

"The scope of the writ has been limited in this state by the provisions of section 1068 of the Code of Civil Procedure, and it is to be issued only 'when an inferior tribunal, board, or officer exercising judicial functions, has exceeded the jurisdiction of such tribunal, board, or officer, and there is no appeal, nor in the judgment of the court any plain, speedy, and adequate remedy;' and by section 1074: 'The review upon this writ cannot be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer. In *Central Pac. R.R. Co.* v. *Placer County,* 43 Cal. 365,

it was held that the clause in section 1074, 'whether the inferior tribunal has regularly pursued the authority of such tribunal.' is to be construed as the equivalent of the clause 'has exceeded the jurisdiction of such tribunal' in section 1068. The character of the act or determination sought to be reviewed, rather than of the tribunal or officer by which the act or determination is made, is the test for determining whether the writ should be issued, for it is only a determination which is made 'when exercising judicial functions' that can be reviewed. 'The officer or tribunal to whom the writ of *certiorari* is issued must be an inferior officer or tribunal exercising judicial functions, and the proceeding to be brought up for review must be a judicial proceeding.' (*People* v. *Bush*, 40 Cal. 344.)

"The functions exercised by a municipal corporation may be legislative, administrative, or judicial, but only the acts done by it 'when exercising judicial functions' can be reviewed under this procedure. 'This writ does not lie under the laws to review the action of any tribunal, board, or officer in the exercise of functions which are legislative in their character.' (*People* v. *Oakland Board of Education*, 54 Cal. 375.)" (*Quinchard* v. *Board of Trustees* (1896) 113 Cal. 664, 668-669 [45 P. 856]. See also *Brown* v. *Board of Supervisors* (1899) 124 Cal. 274, 277 [57 P. 82]; *People* v. *Supervisors* (1898) 122 Cal. 421, 423-424 [55 P. 131]; .*Monarch Cablevision, Inc.* v. *City Council* (1966) 239 Cal.App.2d 206, 210 [48 Cal.Rptr. 550]; *Garin* v. *Pelton* (1922) 58 Cal.App. 672, 673 [209 P. 377]; 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, §§ 2 and 26, pp. 3781-3782 and 3800-3801; and Elliott, *Certiorari and the Local Board* (1941) 29 Cal.L.Rev. 586, 588-589 and 594.)

In *Brown* v. *Board of Supervisors, supra,* the opinion states, "The act of the board of supervisors in determining whether a street shall be opened or closed, or widened or contracted, or otherwise improved, is a legislative act performed in the exercise of the power which has been conferred upon the municipality by the legislature to enable it to provide for the welfare of its citizens; and, although the board is called upon to exercise its judgment in determining whether to authorize the improvement, such judgment is not the exercise of any 'judicial functions,' but is the conclusion which they form in the exercise of the discretionary power that has been intrusted to them, and upon a consideration of the public welfare and demands for which they are to provide. 'The essential elements of judicial action are wanting, namely, the ascertainment of existing rights.' (*People* v. *Supervisors,* 122 Cal. 421.)" (124 Cal. at pp. 277-278. See also *Beals* v. *City of Los Angeles* (1943) 23 Cal.2d 381, 385-386 [144 P.2d 839]; *Symons* v. *San Francisco* (1897) 115 Cal. 555, 560 [42 P. 913, 47 P.

453]; *Quinchard* v. *Board of Trustees, supra,* 113 Cal. 664, 669; *Bowles* v. *Antonetti* (1966) 241 Cal.App.2d 283, 286 [50 Cal.Rptr. 370]; *Cramer* v. *County of Los Angeles* (1950) 96 Cal.App.2d 255, 256-257 [215 P.2d 497]; *People* v. *City of Pomona* (1948) 88 Cal.App.2d 460, 462 [198 P.2d 959, 200 P.2d 176]; *People* v. *City of Oakland* (1929) 96 Cal.App. 488, 492-493 [274 P. 438]; *People* v. *City of San Rafael* (1928) 95 Cal.App. 733, 739 [273 P. 138]; *People* v. *City of Los Angeles* (1923) 62 Cal.App. 781, 786 [218 P. 63]; and *Garin* v. *Pelton, supra,* 58 Cal.App. 672, 673.)

Taken alone the foregoing precedents indicate that the trial court erred in overruling the respondents county's and supervisors' original legal objections to the writ of review. Nevertheless there are other decisions which indicate that *certiorari* or writ of review is available at least to test the question of whether the board of supervisors had jurisdiction to legislate in the matter. Significantly in *Brown* v. *Board of Supervisors* the court did not summarily affirm the judgment rendered following the sustaining of a demurrer to the petitioners-appellants' application in the lower court, but it proceeded to review their objections to the proceedings. (124 Cal. at pp. 279-282.) Moreover, *Symons* v. *San Francisco* seems a thin reed upon which to hand a denial of jurisdiction because in that case the opinion by the court, after hearing in department, stressed the fact that applicants, whose petition for review was rejected on demurrer, were not owners of property abutting on the streets proposed to be closed. (115 Cal. at p. 557.)

*Quinchard* v. *Board of Trustees, supra,* indicates, "The character of the act or determination sought to be reviewed, rather than of the tribunal or officer by which the act or determination is made, is the test for determining whether the writ should be issued, . . ." (113 Cal. at pp. 668-669.) But mere categorization of an act or determination as "judicial" or "legislative" may be but a dogmatic statement to rationalize a desired result. *Brown* v. *Board of Supervisors* suggests the test is whether the act or determination relates to the " 'ascertainment of existing rights.' " (124 Cal. at p. 278.) In *Smith* v. *Strother* (1885) 68 Cal. 194 [8 P. 852] [overruled on facts in *Millholen* v. *Riley* (1930) 211 Cal. 29, 35-36 (293 P. 69)] the court approved the following, from the dissenting opinion of Mr. Justice Field in *Sinking-Fund Cases* (1878) 99 U.S. 700, 750, at page 761 [25 L.Ed. 496, 512, at p. 516]: " 'The distinction between a judicial and a legislative act is well defined. The one determines what the law is, and what the rights of parties are, with reference to transactions already had; the other prescribes what the law shall be in future cases arising under it. Wherever an act undertakes to determine a question of right or

obligation, or of property, as the foundation upon which it proceeds, such act is to that extent a judicial one, and not the proper exercise of legislative functions.' " (68 Cal. at p. 197.) Insofar as the abandonment of a street or highway affects the property rights of abutting owners there is something of a judicial function present.

In *Imperial Water Co.* v. *Supervisors* (1912) 162 Cal. 14 [120 P. 780], the court held that the steps taken by a board of supervisors in organizing an irrigation district under a state enabling act were judicial in character, and were properly reviewable on *certiorari*. The court stated, "It is not disputed that the mere creation of a district of this character is a legislative act. [Citations.] The legislature may either create such corporations itself by a statute passed without any formal notice or hearing, or it may delegate the power to some local board. [Citations.] It does not follow, however, that where the legislature delegates such power to a local board and provides that it can be exercised only upon certain conditions and upon the ascertainment of certain facts by such board, after a notice and hearing to parties interested, that the proceeding thus authorized is not of a judicial character. Although such boards do not have the character of an ordinary court of law or equity, they frequently are required to exercise judicial functions in the course of the duties enjoined upon them. In *Robinson* v. *Board,* 16 Cal. 208, the court says: 'It is sufficient if they are invested by the legislature with power to decide on the property or rights of the citizen. In making their decision they act judicially whatever may be their public character.' There are many decisions to the same effect. (*People* v. *Supervisors,* 8 Cal. 61; *People* v. *Supervisors,* 10 Cal. 344; *Eldorado* v. *Elstner,* 18 Cal. 149; *Murray* v. *Board,* 23 Cal. 494; *Miller* v. *Board,* 25 Cal. 97; *Keys* v. *Marin Co.,* 42 Cal. 254; *Smith* v. *Strother,* 68 Cal. 196 . . . ; *Wulzen* v. *Board,* 101 Cal. 24 . . .)." (162 Cal. at pp. 17-18.)

Of the cases cited above, the following have some relevancy to the matter at hand. In *People* v. *Supervisors of El Dorado County* (1857) 8 Cal. 58, the court reversed a prior decision (*People* v. *Hester* (1855) 6 Cal. 679), which had indicated that "the supervisors, not being judicial officers, or charged with the exercise of judicial duties" could not be the subject of a writ of certiorari. (6 Cal. at pp. 680-681.) The later decision noted, "Subsequent cases, however, showed that the rule thus established would have to be abandoned, or the most important rights of parties would be left to rest entirely upon the uncontrolled discretion or caprice of county supervisors, and that the legitimate result of the decision would be to place the inferior or subordinate agents of the people beyond the reach and control of all supervisory power." (8 Cal. at p. 61.) In

*Murray* v. *Board of Supervisors of Mariposa County* (1863) 23 Cal. 492, the court stated, "There can be no doubt of the power of the District Courts to grant a writ of *certiorari* to review the action of a Board of Supervisors in granting a ferry license. [Citations.]" (23 Cal. at p. 495. Cf. *Monarch Cablevision, Inc.* v. *City Council, supra,* 239 Cal.App.2d 206, 210.) In *Keys* v. *Marin County* (1871) 42 Cal. 252, the court ruled, ". . . the proceedings of the Board, in establishing the road, involved the exercise of judicial functions in the sense of rendering those proceedings the subject of review, through the instrumentality of the writ of *certiorari*." (42 Cal. at pp. 254-255.)

These earlier cases were in effect resuscitated by their mention in the later case because in *People* v. *Board of Supervisors, supra,* the court had stated, "Legislative action in no sense is the exercise of judicial functions. The mere fact that in certain proceedings pending before boards of supervisors notice must be given of a hearing, evidence of witnesses taken, and a decision made by the board involving a determination of facts based upon the exercise of judgment, does not constitute such proceeding even *quasi* judicial. These things constitute the mere form of judicial action. The essential elements of judicial action are lacking, namely, the ascertainment of existing rights. *Murray* v. *Board of Supervisors,* 23 Cal. 492, probably looks the other way from the views we entertain upon this question, and there may be other early cases in company with it, but the tendency of the latter decisions of this court is all the other way. *Certiorari* is not the proper remedy." (122 Cal. at p. 424. See also *Brown* v. *Board of Supervisors, supra,* 124 Cal. at p. 279.) In *Imperial Water Co.* v. *Supervisors* the court concluded, "The circumstance that the facts are to be established as a foundation upon which the subsequent legislative act of creating a public corporation is to be based, does not destroy the judicial character of the determination nor take away the fact that it does affect private property injuriously or beneficially as the case may be. It is, therefore, a proceeding subject to be reviewed in *certiorari*." (162 Cal. at p. 19.) So here the courts may review the question of the establishment of facts upon which the legislative act of abandonment is to be predicated.

In *Walker* v. *City of San Gabriel* (1942) 20 Cal.2d 879 [129 P.2d 349, 142 A.L.R. 1383] the court reversed a judgment of nonsuit entered against a petitioner who sought review of proceedings in which the city council had revoked his license. The court stated, "Either certiorari or mandamus is an appropriate remedy to test the proper exercise of discretion vested in a local board. [Citations.]" (20 Cal.2d at p. 881. See also *Wine* v. *Council of City of Los Angeles* (1960) 177 Cal.App.2d 157,

169 [2 Cal.Rptr. 94] [annexation proceedings]; *Meyers* v. *Board of Supervisors* (1952) 110 Cal.App.2d 623, 626 [243 P.2d 38] [confirmation of decision of planning commission]; *City of Anaheim* v. *City of Fullerton* (1951) 102 Cal.App.2d 395, 400-401 [227 P.2d 494] [annexation proceedings]; and *Peter* v. *Board of Supervisors* (1947) 78 Cal.App.2d 515, 517 [178 P.2d 73] [school district annexation].)

Turning to the instant proceeding it is clear that if the proceedings were what they purported to be—for the abandonment of a part of a county highway (Sts. & Hy. Code, § 957, fn. 3 above)—the appellant had an interest over and above members of the public in general. ▇ "It has long been recognized in this state and elsewhere that an owner of property abutting upon a public street has a property right in the nature of an easement in the street which is appurtenant to his abutting property and which is his private right, as distinguished from his right as a member of the public." (*Bacich* v. *Board of Control* (1943) 23 Cal.2d 343, 349-350 [144 P.2d 818]. See also *People* v. *Ricciardi* (1943) 23 Cal.2d 390, 397-398 [144 P.2d 799]; and *Symons* v. *San Francisco, supra,* 115 Cal. 555, 557.) This right will not be defeated because there is other access to the property. (*Beals* v. *City of Los Angeles, supra,* 23 Cal.2d 381, 384-385.) ▇▇ Moreover, as an owner of lots abutting on a mapped street within a recorded subdivision, she has an interest in the right of way as designated on the map regardless of whether or not it has been accepted as a county highway. (*Danielson* v. *Sykes* (1910) 157 Cal. 686, 689 [109 P. 87]; *Norcross* v. *Adams* (1968) 263 Cal. App.2d 362, 365 [69 Cal.Rptr. 429]; *McKinney* v. *Ruderman* (1962) 203 Cal.App.2d 109, 119 [21 Cal.Rptr. 263]; *Davidow* v. *Griswold* (1913) 23 Cal.App. 188, 192-194 [137 P. 619].)[6] It is true that the right to compensation, if any, for closing of a portion of a public roadway could not be enforced in these proceedings. (See *Brown* v. *Board of Supervisors, supra,* 124 Cal. 274, 280-282; and *Symons* v. *San Francisco, supra,* 115 Cal. 555, 560. Cf. *Beals* v. *City of Los Angeles, supra,* 23 Cal.2d 381, 387-389; *Norcross* v. *Adams, supra,* 263 Cal.App.2d 362, 366; and *Cramer* v. *County of Los Angeles, supra,* 96 Cal.App.2d 255, 258-259.) Also any private right against one obstructing the right of way would have to be enforced in separate proceedings. (See *Neff* v.

[6]"It is a thoroughly established proposition in this state that when one lays out a tract of land into lots and streets and sells the lots by reference to a map which exhibits the lots and streets as they lie in relation to each other, the purchasers of such lots have a private easement in the streets opposite their respective lots, for ingress and egress and for any use proper to a private way, and that this private easement is entirely independent of the fact of dedication to public use, and is a private appurtenance to the lots, of which the owners cannot be divested except by due process of law. [Citations.]" (*Danielson* v. *Sykes* (1910) 157 Cal. 686 at p. 689 [109 P. 87].)

*Ernst* (1957) 48 Cal.2d 628, 636-637 [311 P.2d 849]; and *Norcross* v. *Adams, supra,* 263 Cal.App.2d 362, 365.) Nevertheless, appellant established that she had an interest in the proceedings beyond that of a mere member of the general public. (Cf. *Symons* v. *San Francisco, supra,* 115 Cal. 555, 557.)

"The methods by which county boards of supervisors may abandon public highways are set forth in sections 954 to 960.4 of the Streets and Highways Code. Public hearings, after proper notification, are required in most situations. If a road has remained impassable for five years it may be abandoned simply upon the board's 'own motion' (Sts. & Hy. Code, § 954), or, if it 'has been superseded by relocation,' the board may summarily vacate and abandon by resolution (Sts. & Hy. Code, §§ 960.1, 960.2). When the road has not actually been superseded or become impassable, the Streets and Highway Code authorizes only two methods by which a board of supervisors may abandon it, one by 'resolution of intention,' and the other, by petition of ten freeholders. Both of these methods require the fixing of a day for hearing, notice to all freeholders in the road district, publication of notice in a newspaper, hearing of evidence by any party interested, and a finding that the road, or portion thereof, 'is unnecessary for present or prospective public use.' (Sts. & Hy. Code, §§ 956.8-960.)" (*County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 822-823 [186 P.2d 124, 175 A.L.R. 747]. See also *Palo Alto Inv. Co.* v. *County of Placer.* (1969) 269 Cal.App.2d 363, 367-369 [74 Cal.Rptr. 831].)

In the latter case, the court distinguished summary abandonment on relocation without a hearing as follows: "Such an abandonment does not threaten the public interest in continued availability of the route of travel, since the road continues along its relocated route." (269 Cal.App.2d at p. 369.) In this case, however, the proposed abandonment threatened both the rights of the public and the appellant, and a hearing was required. In *County of San Diego* v. *Cal. Water etc. Co., supra,* the court also stated, ". . . if the Legislature has provided a method by which a county or city may abandon or vacate roads, that method is exclusive. [Citations.]" (30 Cal.2d at p. 823.)

Petitioner alleged that the board of supervisors lacked jurisdiction to order the road abandoned because it was not established that Madrone Avenue was a county road, and because it was a gift of public property. It is concluded that the trial court was authorized to issue a writ of review in order to determine whether the facts alleged and proved authorized the board of supervisors to proceed with the proposed abandonment.

In other words the appellant was entitled to judicial review to determine whether the board had jurisdiction to proceed.

## II

■ Appellant's original plea to the jurisdiction of the board of supervisors raised the questions of whether or not any county highway existed which encompassed the property in question, and, if not, whether the board could properly proceed.

It is clear from the evidence that Madrone Avenue was never accepted as a county highway by official action of the board of supervisors. In fact the resolution adopted by the board in these proceedings (fn. 5 above) expressly recites that the original dedication was rejected, and that Madrone Avenue is not a county road.

In the absence of evidence to the contrary it may be assumed that the offer to dedicate Madrone Avenue which was made by the owner of the property in 1908 has never been withdrawn, and could have been accepted by the county, if deemed in the public interest, at the time the instant proceedings were commenced before the board of supervisors. (See *Yuba City* v. *Mausoleum Syndicate* (1929) 207 Cal. 587, 589-590 [279 P. 427, 66 A.L.R. 318]; *San Francisco S. Co.* v. *Contra Costa County* (1929) 207 Cal. 1, 5-6 [276 P. 570]; *McKinney* v. *Ruderman, supra,* 203 Cal.App.2d 109, 115; and *Tischauser* v. *City of Newport Beach* (1964) 225 Cal.App.2d 138, 144-145 [37 Cal.Rptr. 141].)[7] There is no

---

[7]There is no evidence to show public use of that portion of the roadway which is involved in this proceeding so as to constitute an acceptance as a public roadway. (Cf. *McKinney* v. *Ruderman* (1962) 203 Cal.App.2d 109, 115-116 and 120 [21 Cal.Rptr. 263].) Suggestions that the mere making of sales of lots with reference to a map constitutes an irrevocable dedication to the public without acceptance (see *San Leandro* v. *Le Breton* (1887) 72 Cal. 170, 174-175 [13 P. 405]; *Gross* v. *City of San Diego* (1932) 125 Cal.App. 238, 245-246 [13 P.2d 820]; *Larkey* v. *City of Los Angeles* (1925) 70 Cal.App. 635, 638-639 [233 P. 991]; and *Davidow* v. *Griswold* (1913) 23 Cal.App. 188, 192-193 [137 P. 619]) have been disapproved. (See *County of Inyo* v. *Given* (1920) 183 Cal. 415, 419-420 [191 P. 688]; and *Schmitt* v. *San Francisco* (1893) 100 Cal. 302, 307 [34 P. 961].)

On the other hand, neither can the offer of dedication be deemed withdrawn under the provisions of section 748.5 of the Code of Civil Procedure.* (See *Paris* v. *County of Santa Clara* (1969) 270 Cal.App.2d 691, 697-698 [76 Cal.Rptr. 66]; and cf. *McKinney* v. *Ruderman* (1962) 203 Cal.App.2d 109, 117-118 [21 Cal.Rptr. 263].) Although no acceptance of dedication was endorsed on the map, there is no evidence to show whether or not the property was used for road purposes within 25 years of the initiation of the proceedings, nor to show that the property in the roadway was sold to a third person after the filing of the map, nor to show the length of time the property had been occupied by the encroaching residence.

---

*Section 748.5 provides: "Whenever a proposal to dedicate land for public improvement has been heretofore or hereafter made by map only, without any accept-

showing that the offer to dedicate was ever revoked by the filing of another plat which showed the area as private property, or by a conveyance to a third party which did not recognize the easement created by the map. (Cf. *Schmitt* v. *San Francisco* (1893) 100 Cal. 302, 307 [34 P. 961]; *People* v. *Southern Pac. R.R. Co.* (1924) 68 Cal.App. 153, 160 [228 P. 726]; and *Myers* v. *City of Oceanside* (1907) 7 Cal.App. 87, 92-93 [93 P. 686].)

Since 1937 (Stats. 1937, ch. 670, § 20, p. 1871; and see Bus. & Prof. Code, § 11616) the Subdivision Map Act has provided, "If at the time the final map is approved any streets are rejected, the offer of dedication shall . . . remain open and the governing body may by resolution at any later date, and without further action by the subdivider, rescind its action and accept and open . . . streets . . . for public use, . . ." Under these provisions an offer of dedication can only be terminated in the manner provided in the statute. (See *Stump* v. *Cornell Construction Co.* (1946) 29 Cal.2d 448, 451-452 [175 P.2d 510]; *Galeb* v. *Cupertino Sanitary Dist.* (1964) 227 Cal.App.2d 294, 301-302 [38 Cal.Rptr. 580]; *Quacchia* v. *County of Santa Cruz* (1958) 164 Cal.App.2d 770, 771 [331 P.2d 216]; and *County of Orange* v. *Cole* (1950) 96 Cal.App.2d 163, 169-171 [215 P.2d 41].) In 1951 (Stats. 1951, ch. 1137, § 1, pp. 2904, 2905) section 11616 was amended by the addition of the following language, "provided, however, that if said offer of dedication has never been accepted, the right to accept said offer as to all or any of the streets shown on the map may be terminated and abandoned in the same manner as is prescribed for the abandonment or vacation of streets or highways by Part 3, Division 9, or by Chapter 2, Division 2, of the Streets and Highways Code, whichever is applicable." The former reference is to the provisions governing the vacation of city streets, and the latter reference is to the powers and duties of boards of supervisors with respect to county highways, including their abandonment as found in sections 954 through 960.5 of the Streets and Highways Code.

It is unnecessary to determine whether the latter provisions may be applied to a dedication made under a statute enacted prior to 1937. It appears that at least since 1955 the jurisdiction or power to abandon,

---

ance of the dedication being endorsed thereon, and the land has not been used for the purpose for which the dedication was proposed for a period of 25 years, and the property has been subsequently sold to a third person, after the filing of the map, and used as if free of the dedication, there is a conclusive presumption that the proposed dedication was not accepted, and in a suit to quiet title to such land naming the governmental agency to which the dedication was made by map as defendant, the decree in favor of the plaintiff shall clear the title of the proposed dedication and remove the cloud created by the proposed dedication."

ran not only to an established county highway, but also to "any purported county highway, public highway, road, street, avenue, alley, lane, drive, way, place, court or trail."[8] In fact prior to 1955 it was recognized that an order of abandonment in relation to a street which had been offered for dedication, but had not been accepted, "can be construed only as a rejection of the offer. The manifest object of the petition to the board was to remove any presumption to dedication from the record that the filing of the map or plat of the property had created, . . ." (*County of Inyo* v. *Given* (1920) 183 Cal. 415, 420 [191 P. 688].)

The resolution of the board of supervisors (see fn. 5 above) found, declared and determined, "That Madrone Avenue is not a county road and at best can only be described as a purported county road as defined in Section 960.5 of the Streets and Highways Code." The trial court correctly ruled, "The Board's jurisdiction over the proceedings is clearly spelled out by the broad language defining the term 'county highway' in Section 960.5 of the Streets and Highways Code."

### III

The trial court, having issued the writ (see part I above) and having found that the board of supervisors had jurisdiction over the abandonment proceedings (part II above), also went further and found "that there was adequate, though controverted, evidence before the Board of Supervisors justifying their conclusion that the disputed portion of Madrone Road [*sic*] was 'unnecessary for present or prospective public use.'" (See Sts. & Hy. Code, § 959, fn. 3 above.) Appellant attacks this finding generally and specifically.

"It is settled law that in *certiorari* the reviewing court will not consider the weight of conflicting evidence as to jurisdictional facts given before the tribunal whose action is sought to be reviewed [citations], . . ." (*Imperial Water Co.* v. *Supervisors, supra*, 162 Cal. 14, 27. See also *Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 833 [27 Cal.Rptr. 19, 377 P.2d 83]; and *Bowles* v. *Antonetti* (1966) 241 Cal.App.2d 283, 287 [50 Cal.Rptr. 370].) It is also recognized "that as a general legal proposition, in the absence of fraud or collusion, the decision by the city council of what constitutes public interest or convenience in a matter of the sort here in question [vacation of a city street] is legislative in character, and that

---

[8]Section 960.5 of the Streets and Highways Code, as added by Statutes of 1955, chapter 1561, section 1, page 2840, provides: "The term 'county highway' as used in Sections 954 to 960.4, inclusive, relating to abandonment, shall be deemed to include, but not be limited to, any public highway, road, street, avenue, alley, lane, drive, way, place, court or trail, or any purported county highway, public highway, road, street, avenue, alley, lane, drive, way, place, court or trail."

a determination by the city council of such a question is conclusive. [Citations.]" (*People* v. *City of Los Angeles, supra,* 62 Cal.App. 781, 786.) Nevertheless, in the latter case, the court noted, ". . . if we were to assume the true rule to be that, upon the mere recital in the ordinance of abandonment that the public interest or convenience so required, the decision by the city council, as expressed in its ordinance, becomes final and conclusive, and beyond the reach of judicial inquiry, nothing would prevent the city council of the city of Los Angeles from effectually closing Broadway in its entire length, nor a similar body in the city of New York from closing Wall Street." (*Id.,* pp. 792-793.) Accordingly, the record before the board of supervisors will be examined.

 Respondents rely upon the allegations of the unverified petition which recite, "That said portion of said roadway is unnecessary for present or prospective uses and has never been used as and for roadway purposes." It is questionable whether these recitals alone would support action by the board in view of the provisions of section 959, which direct the board to "hear the evidence offered by any party interested," and require the board to make a finding on "all the evidence submitted." (See fn. 3 above.)

Respondents further rely upon the presentation made by the attorney for the proponents of the petitioner and the acquiescence of the county director of public works in his remarks. It may be assumed, as noted in the order of the trial court, that public hearings before a board of supervisors are normally conducted in a more informal fashion than courtroom proceedings, and that the evidence required by section 959 may consist of unsworn statements. (Cf. *Monarch Cablevision, Inc.* v. *City Council, supra,* 239 Cal.App.2d 206, 212, where the hearing was a matter of legislative grace, and not directed by controlling act of the state Legislature.)

From the presentation by the attorney for the proponents the following appears: the physical location of Madrone Avenue, which is 12 to 16 feet in width, has been in its present location since 1908, and the loss of the portion of the 24-foot mapped roadway proposed to be abandoned will not change the physical circumstances of the roadway or impede traffic conditions on the road. He added that from what he could find out there was no immediate change of Madrone Avenue in the projected road plan for Sonoma County. He also reviewed the background of the creation of the mapped roadway, and the encroachment thereon, and he advised the supervisors that he had spoken to people in the area and found no opposition to the abandonment until the time of hearing, and that the people in the area seemed to be unanimous in that they do not wish

fast traffic there and prefer to keep the road in its then present physical form.

From the foregoing it may be concluded that the portion of the roadway in question never had been, and was not then presently being used for the passage of vehicles, and that, therefore, it was not presently necessary for public use. It was obvious, however, that that portion of the roadway, or a similar area would be necessary in the event of prospective public use, because in such event those wishing to devote the road to public use would have to secure 24 instead of 16 additional feet in order to provide a 40-foot right of way. The fact that there were no immediate plans for such development does not negate the possibility, as envisioned in the report and resolution of the planning commission, that such a development might ensue in the future. The insufficiency of the proponents' proof is that it attempts to prove too much. If the right of way of the portion of Madrone Avenue, which was offered for dedication as a county highway, but never accepted as such, is unnecessary for present or prospective public use, the offer of dedication might be terminated as to all of that portion in appropriate proceedings. Here, however, there is no evidence to show why this particular parcel should be withdrawn from the offer of dedication, except for the fact that a portion of a residence has been constructed on it. This evidence is not only insufficient to show that the portion of the right of way involved is unnecessary for prospective public use, but suggests that there was constructive fraud and a gift of an inchoate public interest by the purported act of abandoning the portion of the right of way.

## IV

In *People v. City of Los Angeles, supra,* the court upheld a judgment which declared void an ordinance vacating a portion of a city street. The trial court found on the evidence "that, without the interest or convenience of the public being considered in any way, the city council sold a public street . . . for a consideration of $1,000." (62 Cal.App. at pp. 785-786.) The court stated, "It is essentially a judicial question whether the vacation of a street be for a public or for a private benefit. Otherwise the will of the city council as expressed in its ordinance of vacation, through the simple expedient of declaring such vacation to be a public benefit, would become supreme, no matter how arbitrary such action nor how great the abuse of discretion so exercised. [Citation.] Legal fraud may consist in a gross abuse of discretion, and the facts in the instant case indicate at least such gross abuse." (*Id.,* p. 793.)

In *Brown* v. *Board of Supervisors, supra,* the opinion states, "The sug-

gestion of the appellants that the effect of the order is to give to the abutting owner upon the northerly side of the street the strip of land taken from the street is not available in this proceeding. No such purpose appears upon the face of the order, and the jurisdiction of the board to make the order is not dependent upon the effect it may have upon the title to the vacated portion of the street." (124 Cal. at p. 282.) Other cases have reiterated that the fact the proponent of the abandonment of a county highway or of the vacating of a city street may benefit from that action does not of itself show fraud or collusion. (See *Beals* v. *City of Los Angeles,* 23 Cal.2d 381, 386 [144 P.2d 839]; *Bowles* v. *Antonetti, supra,* 241 Cal.App.2d 283, 288; *People* v. *City of Pomona, supra,* 88 Cal.App.2d 460, 462; *People* v. *City of Oakland, supra,* 96 Cal.App. 488, 497-498; and *People* v. *City of San Rafael, supra,* 95 Cal.App. 733, 740.) In these cases the principles applied in *People* v. *City of Los Angeles* have been recognized, and yet distinguished. The distinctions are predicated on evidence showing a public benefit or interest which does not appear in this case.

In *Beals* the court found no fraud or collusion because the private benefit which would enable the Department of Water and Power to erect permanent buildings on the vacated alley was incidental to the public welfare. (23 Cal.2d at pp. 386-387.) Moreover, compensation was held to be due the complaining abutting landowners, and it was held error to deny a temporary injunction until provision was made for such compensation. (*Id.,* at pp. 388-389.) In *Bowles* the record showed that the abandoned 10 feet of the street was subject to erosion, that the remaining 50 feet were adequate for public use, and that the city's expense of upkeep would be reduced by giving up that portion of the street. (241 Cal.App.2d at pp. 285, 287-288. See also *City of Los Angeles* v. *Superior Court* (1959) 51 Cal.2d 423, 437-438 [333 P.2d 745].)[9] In *Cramer* there was testimony that the sheriff's office needed the property and that the road had no present or future public use. The court upheld the abandonment despite evidence to the contrary, and pointed out that there was no private gain from the abandonment of the road (96 Cal.App.2d at pp. 257-258). It further appears the objectors lost their right to damages by failure to file a timely claim. (*Id.,* at pp. 258-259.) In *People* v. *City of Oakland* the public benefit was in the rearrangement of streets (96 Cal.App. at p. 498). In *People* v. *City of San Rafael* the public benefit resulted from the closing of a grade crossing and rearrangement of traffic (95 Cal.App. at p. 740).

---

[9]A similar argument—that the public interest would be served if the board of supervisors rid the county of maintenance and tort liability for unnecessary roads—made by respondents founders on the fact that the right of way in question is not a county highway. Moreover, if it were, the abandonment of a small triangle, not improved with a roadway, would not affect those criteria.

Since the record fails to reveal any public benefit or interest in the abandonment of the portion of the right of way involved in these proceedings, and the evidence fails to show that it is not necessary for prospective use, the resolution of the board should have been declared void. There is no more reason for the board to abandon a portion of the inchoate right to accept a dedication in the future than there is to abandon a portion of an established county highway for a similar result.

Nothing herein precludes the encroaching property owner from securing an adjudication of such private rights as she may have established, against her neighbors, and, if successful, from then showing an actual or presumed (Code Civ. Proc., § 748.5) termination of the pre-1955 offer to dedicate. She is not, however, entitled to the gratuitous surrender by the county of her fellow lot holders' inchoate rights on the evidence presented to the board of supervisors.

The judgment is reversed with directions to enter judgment that the board of supervisors exceeded its jurisdiction in these proceedings and that the purported resolution of abandonment be declared void.

Molinari, P. J., and Elkington, J., concurred.